UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 OCT -1  A 9: 00

U.S. DISTRICT COURT

|  |  |
|---|---|
| IM PARTNERS and<br>Its General Partner<br>DANIEL E. MARINO,<br>  Plaintiffs<br><br>v.<br><br>DEBIT DIRECT LIMITED<br>JACK O'HALLORAN<br>DAVID BUTTERWORTH<br>MICHAEL KELLY<br>SKANCO BUSINESS SYSTEMS LIMITED<br>BARRY KENNEDY<br>RESTART LIMITED<br>IAN LLOYD<br>ANDREW KERMODE<br>DOMICILIUM (IOM) LIMITED<br>JOHN ALLEN<br>PATRICK WALSH<br>  Defendants | 304CV1651<br><br>DOCKET NO. _____<br><br>TRIAL BY JURY<br>IS DEMANDED |

## COMPLAINT

Plaintiff, IM Partners and its general partner Daniel E. Marino, allege as follows:

### JURISDICTION AND VENUE

1. This Complaint is filed and these proceedings are instituted under the laws for the protection of purchasers of securities, specifically the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78a, et seq.), as amended to date, and particularly Section 27 thereof (15 U.S.C. §78aa); Title 28, United States Code §1331 of the Judicial Code and Judiciary (28 U.S.C. 1331). This

Court has supplemental jurisdiction over the state law claims pursuant to Title 28 U.S.C. §1367 and the amount in controversy is in excess of $75,000.00.

2. Venue is proper in this Court pursuant to Section 27 of the Exchange Act (15 U.S.C. 78aa) and Title 28, United States Code §1391 of the Judicial Code and Judiciary (29 U.S.C. §1391, as amended), as, inter alia, several of the offers to sell and the sales of securities took place in this judicial district, many of the claims asserted herein arose in this judicial district, a substantial portion of the events or omissions giving rise to the claims herein asserted occurred in this judicial district.

## DESCRIPTION OF THE PARTIES

3. Plaintiff IM Partners is a Connecticut General Partnership with a principal office in Stamford Connecticut and Daniel E. Marino is an individual residing in Connecticut ("Marino"), and hereinafter referred to as ( "Plaintiff").

4. At all time relevant hereto, Marino was general partner of Plaintiff and managed, controlled and directed the affairs of Plaintiff and in doing the acts hereinafter alleged, unless otherwise specifically stated herein,   Marino was acting, in whole or in part, on behalf of Plaintiff as general partner.

5. Plaintiff is informed and believes, and based thereon alleges, that Defendant Debit Direct, Ltd. ("Debit Direct"), is a corporation duly organized and authorized to do business in the Isle of Man, with its principal place of business located in Braddan, Isle of Man.

6. Plaintiff is informed and believes, and based thereon alleges, that Defendant Debit Direct at all relevant times was managed, controlled and/or

2

directed by Defendants O'Halloran, Butterworth and Kelly, and that in doing the acts and in obtaining the benefits hereinafter alleged, Defendants O'Halloran, Butterworth and Kelly were acting, in whole or in part, on behalf of Defendant Debit Direct.

7. Plaintiff is informed and believes, and based thereon alleges, that Defendant Skanco Business Systems, Ltd. ("Skanco"), is a corporation duly organized and authorized to do business in the Isle of Man, with its principal place of business located in Braddan, Isle of Man.

8. Plaintiff is informed and believes, and based thereon alleges, that Defendant Skanco at all relevant times was managed, controlled and/or directed by Defendants Kennedy and Butterworth, and that in doing the acts and in obtaining the benefits hereinafter alleged, Defendants Kennedy and Butterworth, were acting in whole or in part, on behalf of Defendant Skanco.

9. Plaintiff is informed and believes, and based thereon alleges, that Defendant RESTART, Ltd. ("RESTART"), is a corporation duly organized and authorized to do business in the Isle of Man, with its principal place of business located in Braddan, Isle of Man.

10. Plaintiff is informed and believes, and based thereon alleges, that Defendant RESTART at all relevant times was owned and controlled by Defendant Skanco and was therefore managed, controlled and/or directed by Defendants, Butterworth and Kennedy, and that in doing the acts and in obtaining the benefits hereinafter alleged, Defendants Kennedy and Butterworth, acted in whole or in part, on behalf of Defendant RESTART.

11. Plaintiff is informed and believes, and based thereon alleges, that Defendants Lloyd and Kermode were officers or employees of RESTART, acting under the direction and control of Defendants Skanco, Kennedy and Butterworth, and that in doing the acts and in obtaining the benefits hereinafter alleged, Defendants Lloyd and Kermode, acted in whole or in part, on behalf of Defendant RESTART.

12. Plaintiff is informed and believes, and based thereon alleges, that Defendant Domicilium (IOM) Limited ("Domicilium"), is a corporation duly organized and authorized to do business in the Isle of Man, with its principal place of business located in Castletown, Isle of Man.

13. Plaintiff is informed and believes, and based thereon alleges, that Defendant Domicilium at all relevant times was managed, controlled and/or directed by Defendant Allen.

14. Plaintiff is informed and believes, and based thereon alleges, that Defendant Jack O'Halloran ("O'Halloran") was at all relevant times, and is, an individual residing in the Isle of Man with a second residence located in the State of California, USA.

15. Plaintiff is informed and believes, and based thereon alleges, that Defendant O'Halloran was at all relevant times, the majority shareholder of Defendant Debit Direct.

16. Plaintiff is informed and believes, and based thereon alleges, that Defendant O'Halloran was at all relevant times an agent, officer, director, and employee of Defendant Debit Direct, and in doing the things herein alleged was

4

acting within the course and scope of such agency and employment and with the permission and consent of his co-defendants.

17. Plaintiff is informed and believes, and based thereon alleges, that Defendant David Butterworth ("Butterworth") was at all relevant times, and is, an individual residing in the Isle of Man.

18. Plaintiff is informed and believes, and based thereon alleges, that Defendant Butterworth was at all relevant times, a shareholder of Defendant Debit Direct.

19. Plaintiff is informed and believes, and based thereon alleges, that Defendant Butterworth was at all relevant times an agent, officer, director, and employee of Defendant Debit Direct, and in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of his co-defendants.

20. Plaintiff is informed and believes, and based thereon alleges, that Defendant Butterworth was at all relevant times, a shareholder of Defendant Skanco.

21. Plaintiff is informed and believes, and based thereon alleges, that Defendant Butterworth was at all relevant times an agent, officer, director, and employee of Defendant Skanco, and in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of his co-defendants.

22. Plaintiff is informed and believes, and based thereon alleges, that Defendant Michael Kelly ("Kelly") was at all relevant times, and is, an individual

residing in the Isle of Man and is an attorney licensed under the Laws of Ireland.

23. Plaintiff is informed and believes, and based thereon alleges, that Defendant Kelly was at all relevant times an agent, officer, director, and employee of Defendant Debit Direct, and in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of his co-defendants.

24. Plaintiff is informed and believes, and based thereon alleges, that Defendant Barry Kennedy ("Kennedy") was at all relevant times, and is, an individual residing in the Isle of Man.

25. Plaintiff is informed and believes, and based thereon alleges, that Defendant Kennedy was at all relevant times, a shareholder of Defendant Skanco.

26. Plaintiff is informed and believes, and based thereon alleges, that Defendant Kennedy was at all relevant times an agent, officer, director, and employee of Defendant Skanco, and in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of his co-defendants.

27. Plaintiff is informed and believes, and based thereon alleges, that Defendant Ian Lloyd ("Lloyd") was at all relevant times, and is, an individual residing in the Isle of Man.

28. Plaintiff is informed and believes, and based thereon alleges, that Defendant Lloyd was at all relevant times an agent, officer, director, and employee of Defendant RESTART, and in doing the things herein alleged was

6

acting within the course and scope of such agency and employment and with the permission and consent of his co-defendants.

29. Plaintiff is informed and believes, and based thereon alleges, that Defendant Andrew Kermode ("Kermode") was at all relevant times, and is, an individual residing in the Isle of Man.

30. Plaintiff is informed and believes, and based thereon alleges, that Defendant Kermode was at all relevant times an agent, officer, director, and employee of Defendant RESTART, and in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of his co-defendants.

31. Plaintiff is informed and believes, and based thereon alleges, that Defendant Patrick "Paddy" Walsh ("Walsh") was at all relevant times, and is, an individual residing in the Isle of Man.

32. Plaintiff is informed and believes, and based thereon alleges, that Defendant Walsh was presented to Plaintiff by Defendants Butterworth, Kelly and O'Halloran as a proposed director of Defendant Debit Direct, and in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission, under the direction of and with the consent of his co-defendants.

33. Plaintiff is informed and believes, and based thereon alleges, that Defendant John Allen ("Allen") was at all relevant times, and is, an individual residing in the Isle of Man.

34. Plaintiff is informed and believes, and based thereon alleges, that

Defendant Allen was at all relevant times an agent, officer, director, and employee of Defendant Domicilium, and in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of his co-defendants.

## RELATIONSHIP OF THE DEFENDANTS

35. Plaintiff is informed and believes, and based thereon alleges, that under the direction of Defendants O'Halloran, Butterworth and Kelly, Defendant Debit Direct entered into transactions with Defendants Skanco, RESTART, and Domicilium (including but not limited to: long term leases, equipment purchase agreements, software and hardware development agreements, computer hosting agreements and consulting agreements) thereby: (i) conferring benefits upon Defendants Skanco, RESTART, Domicilium and (ii) diverting substantially all of the funds invested in Defendant Debit Direct by Plaintiff to Defendants Skanco, RESTART, Domicilium and the respective owners, agents, officers and directors of these entities.

36. Plaintiff is informed and believes, and based thereon alleges that Skanco, under the direction of Defendants Kennedy and Butterworth entered into transactions with Defendant Debit Direct thereby obtaining substantial benefits for Skanco and diverting a substantial portion of funds invested in Defendant Debit Direct by Plaintiff to Defendant Skanco and the respective owners, agents, officers and directors of Defendant Skanco, including Defendants Butterworth and Kennedy.

37. Plaintiff is informed and believes, and based thereon alleges that

8

Skanco, under the direction of Defendants Kennedy and Butterworth also entered into joint enterprises with Defendants RESTART and Domicilium in order to further divert funds provided by Plaintiff to Debit Direct.

38. Plaintiff is informed and believes, and based thereon alleges, that Defendants Skanco, Kennedy and Butterworth formed RESTART and employed Lloyd and Kermode as officers of RESTART, who, acting on behalf of RESTART, as a joint enterprise with Defendants Skanco, Kennedy and Butterworth, entered into transactions with Defendant Debit Direct thereby obtaining substantial benefits for RESTART by diverting a portion of the funds invested in Defendant Debit Direct by Plaintiff to Defendant RESTART and the respective owners, agents, officers and directors of Defendant RESTART, including Defendants Skanco, Butterworth, Kennedy, Lloyd and Kermode.

39. Plaintiff is informed and believes, and based thereon alleges, that Defendants Skanco, Kennedy, Butterworth, RESTART and Lloyd and Kermode as officers of RESTART, acting on behalf of RESTART and Skanco, as a joint enterprise among Defendants Skanco, Kennedy and Butterworth, RESTART, Lloyd and Kermode entered into transactions with Defendant Domicilium and, Skanco and RESTART, acting as partners with Domicilium, in a joint enterprise, caused Defendant Debit Direct to enter into transactions with Defendant Domicilium thereby obtaining substantial benefits for the partnership comprised of Defendants Skanco, RESTART and Domicilium by diverting a portion of funds invested in Defendant Debit Direct by Plaintiff to the partnership comprised of Skanco, RESTART and Domicilium and the respective owners, agents, officers

9

and directors of Defendants Skanco, RESTART, and Domicilium including Defendants Skanco, Butterworth, Kennedy, Lloyd Kermode, Domicilium and Allen.

40. Plaintiff is informed and believes, and based thereon alleges that Defendant Domicilium, Defendant Skanco and Defendant RESTART entered into a joint enterprise or partnership to obtain benefits from transactions entered into with Defendant Debit Direct and that Defendants Domicilium, Skanco and RESTART in doing the things herein alleged were acting within the course and scope of such partnership and joint enterprise, under the direction of and with the consent of each member of such partnership and joint enterprise.

41. Plaintiff is informed and believes, and based thereon alleges that in doing the acts and in obtaining the benefits hereinafter alleged, Defendant Allen acted, in whole or in part, on behalf of Defendant Domicilium and that Defendant Domicilium acted jointly with Defendants Skanco and RESTART on behalf of its partnership with Skanco and RESTART in doing the acts and obtaining the benefits hereinafter alleged.

42. Plaintiff is informed and believes, and based thereon alleges, that Defendant Butterworth, acting in concert with Defendant Kennedy directed and approved transactions entered into by Defendants Skanco and RESTART, with Defendant Debit Direct, intending to confer benefits upon Defendants Skanco, RESTART, Lloyd, Kermore, Kennedy and Butterworth.

43. Plaintiff is informed and believes, and based thereon alleges, that Defendant Kennedy, acting in concert with Defendant Butterworth directed and

approved transactions entered into by Defendants Skanco and RESTART with Defendant Debit Direct, intending thereby to confer benefits upon Defendants Skanco, RESTART, Lloyd, Kermode, Kennedy and Butterworth.

## GENERAL ALLEGATIONS

### The Initial Solicitation and Representations

44. On or about October 9, 2003, Plaintiff's general partner, Marino was approached by Defendant O'Halloran in the Isle of Man and was solicited by Defendant O'Halloran to make an investment in Debit Direct (the "October 9 2003 Meeting"). During the October 9, 2003 Meeting, Defendant O'Halloran, acting on behalf of Defendant Debit Direct and his co-shareholders, officers and directors, as a shareholder, officer and director of Debit Direct provided numerous oral representations respecting: (i) the potential for success of the proposed business of Debit Direct, (ii) the integrity and qualification of himself and Defendants Butterworth and Kelly, serving as directors and officers of Defendant Debit Direct, and (iii) the collective ability of himself and Defendants Butterworth and Kelly to assure the success of the business of Debit Direct. (the oral representations enumerated in subparagraphs (i), (ii) and (iii) in this paragraph 44 are hereinafter referred to as the "Prospects of Debit Direct").

### The Subsequent Meetings and Representations

45. On or about October 27, 2003, Defendant O'Halloran visited Plaintiff's general partner, Marino, at his offices in Stamford, Connecticut and conducted face-to-face meetings with Plaintiff. At this meeting, Defendant O'Halloran, provided further representations respecting the potential for success of the

11

proposed business of Debit Direct, (the "October 27, 2003 Meeting").

46. Thereafter, Plaintiff and its general partners were contacted on numerous occasions by Defendants O'Halloran, Butterworth and Kelly, acting as officers and directors of Defendant Debit Direct, in each case making further representations to Plaintiff and its general partners regarding the Prospects of Debit Direct, and soliciting Plaintiff's purchase of the shares of Debit Direct. The representations made in the October 27, 2003 Meeting and the representations alluded to herein upon further contact of Plaintiff's general partners by Defendants O'Halloran, Butterworth and Kelly shall hereinafter be referred to as the "Further Representations Regarding the Prospects of Debit Direct."

**The Memorandum Memorializing the Representations and Undertakings**

47. As a result of and in reliance upon the Prospects of Debit Direct, as represented to Plaintiff by Defendant Butterworth, and the Further Representations Regarding the Prospects of Debit Direct, the proposed terms of the investment by Plaintiff was set forth in a Memorandum of Understanding dated November 17, 2003 attached hereto as Exhibit 1 and by this reference incorporated herein (the "November 17, 2003 Memorandum"), which was executed and delivered in Stamford Connecticut by Plaintiff's general partner, Marino, on behalf of Plaintiff and Defendant O'Halloran, on behalf of Defendant Debit Direct and his co-shareholders, officers and directors, Defendants Butterworth and Kelly.

**The Initial Investments**

48. As a result of and in reliance upon the Prospects of Debit Direct and

the Further Representations Regarding the Prospects of Debit Direct, on or about November 28, 2003 Plaintiff wired to Defendant Debit Direct a total of $500,000 (the "November 28, 2003 Wire") and, on or about December 3, 2003 Plaintiff wired to Defendant O'Halloran an additional $500,000 (the "December 3, 2003 Wire").

**Representation Regarding Required Funding**

49. Defendants O'Halloran, Butterworth and Kelly represented to Plaintiff that the total investment of USD$2,000,000 requested by them and as set forth in the November 17, 2003 Memorandum would be sufficient to assure the success of the proposed business of Debit Direct as represented in the Prospects of Debit Direct and the Further Representations Regarding the Prospects of Debit Direct (the "Required Funding").

50. Defendants O'Halloran, Butterworth and Kelly, acting as officers and directors of Debit Direct, were at all time aware of the terms of the November 17, 2003 Memorandum, including the amount of the Required Funding of USD$2,000,000, as of the date of its execution November 17, 2003.

**The Subsequent Funding by Plaintiff**

51. In accordance with the terms of the November 17, 2003 Memorandum, and in reliance upon the on representations respecting the Prospects of Debit Direct, the Further Representations Regarding the Prospects of Debit Direct and the Required Funding, as reflected in the November 17, 2003 Memorandum, on about March 16, 2004, Plaintiff wired an additional USD$1,000,000 to Defendant Debit Direct (the "March 16, 2004 Wire").

52. As of the date hereof, Plaintiff has wired a total of USD$2,000,000, collectively to Defendants O'Halloran and/or to Debit Direct, all based upon representations respecting the Prospects of Debit Direct, the Further Representations Regarding the Prospects of Debit Direct and the Required Funding as reflected in the November 17, 2003 Memorandum.

**Defendant's Duties to Plaintiff**

53. Plaintiff and its general partners were induced to and did place their full trust and confidence in Defendants O'Halloran, Butterworth and Kelly as officers and directors of Debit Direct, such that a fiduciary relationship developed and existed at the time each transfer of funds to Defendants O'Halloran and Debit Direct were made by Plaintiff. As a result of that relationship, Plaintiff was entitled to the highest degree of loyalty from Defendants O'Halloran, Butterworth and Kelly and was entitled to their faithful service and performance. ("Fiduciary Duties")

54. In addition, Defendants O'Halloran, Butterworth and Kelly had a duty to: (1) not favor their respective interests over the interests of Plaintiff; (2) to correctly state the amount of the Required Funding, (3) to disclose to Plaintiff fully and completely material facts including their conflicting relationships, their interests in the relevant transactions and the terms of the contracts that would materially adversely affect the interests of Plaintiff, and (4) disclose to Plaintiff fully their respective backgrounds along with their qualifications to serve in the positions served as directors and officers of Debit Direct (including any disqualifications imposed by governmental authorities). ("Duties of Fair Dealing

and Disclosure")

**Concealment of Disqualification of Defendant O'Halloran by Government Authorities**

55. In soliciting Plaintiff's investment in Debit Direct and inducing Plaintiffs to enter into the November 17, 2003 Memorandum and to wire a total of USD$2,000,000 to either Defendant O'Halloran and/or Debit Direct, Defendants Debit Direct, O'Halloran, Butterworth and Kelly failed to disclose to Plaintiff the fact that, contrary to the prior representations made to Plaintiff respecting the integrity and qualification of Defendants O'Halloran, Butterworth and Kelly to serve as directors and officers of Defendant Debit Direct, and in direct contravention of their Fiduciary Duties and Duties of Fair Dealing and Disclosure, Defendant O'Halloran had, by Court Order, been banned from serving as a director of an Irish Company under Section 150(1) of the Companies Act 1990 in the Irish Republic for a period of 5 years from Friday 24th January 2003, which was known to Defendant O'Halloran and reasonably discoverable by Defendants Debit Direct, Butterworth and Kelly as residents of the Isle of Man. (the "Undisclosed Government Order Against Defendant O'Halloran").

56. The Undisclosed Government Order Against Defendant O'Halloran were made known to Plaintiff only after Plaintiff had: (i) been solicited to invest in Defendant Debit Direct through the representations regarding the Prospects of Debit Direct, the Further Representations Regarding the Prospects of Debit Direct and the Required Funding, (ii) been induced to enter into the November 17, 2003 Memorandum and  (iii) had been induced to transferred funds totaling

USD$2,000,000 to either Defendant O'Halloran or Debit Direct.

57. Plaintiff could not reasonably have discovered the existence of the Undisclosed Government Order Against Defendant O'Halloran, as such order was entered by the government of Ireland and was not reasonably available in public records of the United States where Plaintiff resides.

58. Defendants O'Halloran, Butterworth and Kelly, as officers and directors of Defendant Debit Direct: (i) owed both Fiduciary Duties and Duties of Fair Dealing and Disclosure to Plaintiff, which included a duty to fairly disclose material facts concerning the integrity and qualification of selected officers and directors of Defendant Debit Direct such as the Undisclosed Government Order Against Defendant O'Halloran and Plaintiff was entitled to rely and did in fact rely upon the performance of such duties in executing the November 17, 2003 Memorandum and in investing the USD$2,000,000.

59. The Undisclosed Government Order Against Defendant O'Halloran was a fact that would be material to a reasonably prudent investor and was in fact material to Plaintiff in its decision to invest in shares of Defendant Debit Direct. Plaintiff executed the November 17, 2003 Memorandum and provided the USD$2,000,000 to Defendants O'Halloran and Debit Direct without knowledge of the Undisclosed Government Order Against Defendant O'Halloran. Had Plaintiff been aware of such fact, it would not have executed the November 17, 2003 Memorandum or provided the USD$2,000,000.

60. The Undisclosed Government Order Against Defendant O'Halloran, represents a material fact that was concealed by Defendants Debit Direct,

O'Halloran, Butterworth and Kelly, and each of these Defendants, in concealing such material facts: (i) acted willfully and recklessly with either an intent to defraud Plaintiff and induce Plaintiff's execution of the November 17, 2003 Memorandum and investment of $2,000,000 for the shares of Debit Direct, or (ii) acted in reckless disregard of the truth, and knowingly used such concealment, devices, schemes, and artifices to defraud Plaintiff to deprive Plaintiff of its, property or legal rights or otherwise cause Plaintiff injury, and Defendants, and each of them did the things herein alleged with a reckless indifference to the rights of Plaintiff and with intentional and wanton violation of those rights of Plaintiff, who is therefor entitled to an award of exemplary or punitive damages.

**Facts Concealed by Defendants Debit Direct, O'Halloran, Butterworth and Kelly Concerning Debit Direct**

61. Further, in soliciting Plaintiff's investment and inducing Plaintiff to execute the November 17, 2003 Memorandum and to wire a total of USD$2,000,000 to Defendants O'Halloran and/or Debit Direct, Defendants Debit Direct, O'Halloran, Butterworth and Kelly failed to disclose to Plaintiff the following facts, which were known to Defendants Debit Direct, O'Halloran, Butterworth and Kelly: (i) at the time of the October 9 and October 27, 2003 Meetings when Plaintiff was solicited to invest in Debit Direct and was presented with the representations regarding the Prospects of Debit Direct, the Further Representations Regarding the Prospects of Debit Direct and the Required Funding, (ii) at the time Plaintiff was induced to execute and deliver the  November 17, 2003 Memorandum and (iii) at the time Plaintiff transferred the funds pursuant to each of the November 28,

17

2003, December 3, 2003 and the March 16 2004 Wires:

A. The Required Funding of USD$2,000,000 provided by Plaintiff was not sufficient to complete the development of the business of Debit Direct as represented to Plaintiff in the representations regarding the Prospects of Debit Direct, the Further Representations Regarding the Prospects of Debit Direct and the Required Funding and as evidenced by the November 17, 2003 Memorandum (the "Undisclosed Required Funding").

B. Defendants O'Halloran, Kelly, Butterworth and Butterworth's partner and co-owner of Skanco, Defendant Kennedy, along with their co-partners Domicilium and its controlling officer Defendant Allen and Defendants Lloyd and Kermode, as agents of Defendants Butterworth and Kennedy, had either directly or indirectly, through entities they controlled, entered into transactions with Debit Direct (thereby diverting or intending to divert funds invested in Defendant Debit Direct by Plaintiff) including transactions to: (i) purchase equipment from Skanco at a mark-up and for a commission to the benefit of Skanco, Butterworth and Kennedy; (ii) pay rents to Skanco for lease of space from Skanco to the benefit of Skanco, Butterworth and Kennedy; (iii) pay hosting fees to RESTART for development of the computer systems to the benefit of Defendants Skanco, RESTART, Butterworth, Kennedy, Lloyd and Kermode; and (iv) pay development and hosting fees to Domicilium through its partnership with Skanco and RESTART, to the benefit of Defendants Domicilium, Allen, Butterworth, Kennedy and Skanco. (the "Undisclosed Conflicted

Transactions").

C. Defendant Butterworth possessed a substantial interest in Skanco and RESTART, that substantially and materially impaired his ability to exercise his duties as an officer and director of Debit Direct and directly conflicted with his Fiduciary Duties and Duties of Fair Dealing and Disclosure owed to Plaintiff ("Undisclosed Conflicted Relationships").

D. Documents and agreements utilized to transact the Undisclosed Conflicted Transactions ("Material Contracts") were not negotiated at arms length among the Defendants enumerated in subparagraph B herein above and contained, among other provisions, terms that resulted in a forfeiture of all of the assets of Defendant Debit Direct to Defendant Skanco, in the event that Defendant Debit Direct failed to perform as a result of an insufficiency of the Required Funding, as represented to Plaintiff in the Prospects of Debit Direct, the Further Representations Regarding the Prospects of Debit Direct the Required Funding, and as evidenced by the November 17, 2003 Memorandum. ("Undisclosed Terms of Material Contracts")

62. Plaintiff was not apprised of or otherwise aware of the previously Undisclosed Required Funding, the Undisclosed Conflicted Relationships, the Undisclosed Conflicted Transactions or the Undisclosed Terms of Material Contracts until April of 2004, after Plaintiff had: (i) been solicited to invest in Defendant Debit Direct through the representations regarding the Prospects of Debit Direct, the Further Representations Regarding the Prospects of Debit

19

Direct and the Required Funding, (ii) been induced to enter into the November 17, 2003 Memorandum and  (iii) been induced to and in fact had transferred funds totaling USD$2,000,000 to either Defendant O'Halloran or Debit.

63. Plaintiff could not reasonably have discovered the existence of the Undisclosed Required Funding, the Undisclosed Conflicted Relationships, the Undisclosed Conflicted Transactions or Undisclosed Terms of Material Contracts; as such undisclosed facts were under the control of the Defendants O'Halloran, Butterworth and Kelly and were concealed in order to further their Conspiracy to Divert Funds, as defined herein.

64. Defendants O'Halloran, Butterworth and Kelly, as officers and directors of Defendant Debit Direct: (i) owed both Fiduciary Duties and Duties of Fair Dealing and Disclosure to Plaintiff, which included a duty to fairly disclose material facts such as the true amount of required funding, their conflicted relationships, the conflicted transactions and/or terms of material contracts, and Plaintiff was entitled to rely and did in fact rely upon the performance of such duties in executing the November 17, 2003 Memorandum and in investing the USD$2,000,000.

65. The Undisclosed Required Funding, Undisclosed Conflicted Relationships, the Undisclosed Conflicted Transactions and Undisclosed Terms of Material Contracts, were facts that would be material to a reasonably prudent investor and were in fact material to Plaintiff in its decision to invest in shares of Defendant Debit Direct. Plaintiff executed the November 17, 2003 Memorandum and provided the USD$2,000,000 to Defendants O'Halloran and Debit Direct

without knowledge of Undisclosed Required Funding, Undisclosed Conflicted Relationships, the Undisclosed Conflicted Transactions or Undisclosed Terms of Material Contracts. Had Plaintiff been aware of such facts, or any of them, it would not have executed the November 17, 2003 Memorandum or provided the USD$2,000,000.

66. The Undisclosed Required Funding, the Undisclosed Conflicted Relationships, the Undisclosed Conflicted Transactions and Undisclosed Terms of Material Contracts, and each of them, represent material facts that were concealed by Defendants Debit Direct, O'Halloran, Butterworth and Kelly, and each of these Defendants, in concealing such material facts: (i) acted willfully and recklessly with either an intent to defraud Plaintiff and induce Plaintiff's execution of the November 17, 2003 Memorandum and investment of USD$2,000,000 for the shares of Debit Direct, or (ii) acted in reckless disregard of the truth, and knowingly used such concealment, devices, schemes, and artifices to defraud Plaintiff to deprive Plaintiff of its, property or legal rights or otherwise cause Plaintiff injury, and Defendants, and each of them did the things herein alleged with a reckless indifference to the rights of Plaintiff and with intentional and wanton violation of those rights of Plaintiff, who is therefor entitled to an award of exemplary or punitive damages.

67. On or about April 20, 2004, Defendants Butterworth, Kelly and O'Halloran, accompanied by Defendant Walsh, visited Plaintiff's offices in Stamford Connecticut (the "April 20, 2004 Meeting") and requested an additional investment of USD$2,500,000 from Plaintiff stating that the Required Funding of

USD$2,000,000 previously provided by Plaintiffs pursuant to the November 17, 2003 Memorandum was "mistakenly" stated in US dollars while it was their intent to state it in British Pounds and that Plaintiff's investment of USD$2,000,000 was insufficient to complete the development of the business of Debit Direct as previously represented to Plaintiff in representations regarding the Prospects of Debit Direct, the Further Representations Regarding the Prospects of Debit Direct and the Required Funding and as reflected in the November 17, 2003 Memorandum ("Affirmative Misstatement as to the Required Funding").

68. Defendant, O'Halloran attended the April 20, 2004 Meeting and in face to face confrontation with Plaintiff's general partner Marino, Defendant O'Halloran reminded Marino that: (i) he, Defendant O'Halloran, was the son of a world renowned mafia crime boss who was infamously murdered and was raised by another world renowned mafia crime boss and (ii) Plaintiff and its general partners had better consider who they were dealing with in considering whether to make the additional investment of USD$2,500,000. Plaintiff's general partner clearly understood the comment made by Defendant O'Halloran as a threat by Defendant O'Halloran to employ Defendant O'Halloran's mafia associations to cause harm to Plaintiff's general partner Marino if he did not provide the additional USD$2,500,000 (the "O'Halloran Threat").

69. At the time Defendants O'Halloran, Butterworth and Kelly, acting as officers and directors of Defendant Debit Direct, made the representations respecting the Required Funding, and as reflected in the November 17 Memorandum, executed and delivered by Defendant O'Halloran, acting on behalf

22

of Defendant Debit Direct: (i) these representations regarding the Required Funding were false; (ii) Defendant's O'Halloran, Butterworth and Kelly, acting as directors and officers of Defendant Debit Direct knew of their falsity or were reasonably responsible for assuring their truth, (ii) Defendant's O'Halloran, Butterworth and Kelly, acting as directors and officers of Debit Direct, knew of their materiality to Plaintiff and that Plaintiff would rely upon the truthfulness of these representations as to Required Funding in making its investment decision to purchase the shares of Debit Direct, and (iii) Defendant's O'Halloran, Butterworth and Kelly acting as directors and officers of Debit Direct made the Affirmative Misstatements as to Required Funding and included the Affirmative Misstatements as to Required Funding in the November 17 Memorandum in order to induce Plaintiff into executing the November 17, 2003 Memorandum and into investing a total of USD$2,000,000.

70. At the time Defendants O'Halloran, Butterworth and Kelly made the Affirmative Misstatement as to the Required Funding, they were officers and directors of Defendant Debit Direct and owed Plaintiff both the Fiduciary Duties and the Duties of Fair Dealing and Disclosure, including the duty to fairly state the true amount of the Required Funding or otherwise not misstate such amount to a potential investor in shares of Defendant Debit Direct for which they served as directors and officers.

71. Plaintiff was not aware of the falsity of the Affirmative Misrepresentations as to Required Funding at the time they were made or at the time of executing the November 17, 2003 Memorandum or at the time of providing Defendants

O'Halloran and Debit Direct the USD$2,000,000 and could not have reasonably discovered such falsity, as such information was under the control of Defendants O'Halloran, Butterworth and Kelly and was made in furtherance of the Conspiracy to Divert Funds as defined herein below.

72. Further, Plaintiff was entitled to and did rely upon the Fiduciary Duties and the Duties of Fair Dealing and Disclosure owed to it by Defendants O'Halloran, Butterworth and Kelly, as officers of Defendants Debit Direct.

73. The amount of the Required Funding was a fact that would be material to a reasonably prudent investor and was in fact material to Plaintiff in its decision to invest in shares of Defendant Debit Direct and Plaintiff executed the November 17, 2003 Memorandum and provided the USD$2,000,000 to Defendants O'Halloran and Debit Direct in reliance upon the truthfulness of the representation respecting the Required Funding. Had Plaintiff been aware of the falsity of such representation, it would not have executed the November 17, 2003 Memorandum or provided the USD$2,000,000.

74. When the Affirmative Misstatement as the Required Funding was made by Defendants O'Halloran, Butterworth and Kelly, acting on behalf of Defendant Debit Direct, it was false and made either intentionally and/or negligently by Defendants O'Halloran, Butterworth and Kelly, acting on behalf of Defendant Debit Direct, and each of them, either knew it to be false or had no reasonable grounds for believing it to be true, and the Affirmative Misstatement as to Required Funding was made with the intention on the part of Defendants O'Halloran, Butterworth and Kelly, acting on behalf of Defendant Debit Direct,

and each of them, to induce Plaintiff to execute and deliver the November 17, 2003 Memorandum and provide them with the USD$2,000,000 and thereby deprive Plaintiff of its property and legal rights or otherwise causing Plaintiff injury through the complete loss of its investment, and Defendants, and each of them did the things herein alleged with a reckless indifference to the rights of Plaintiff and with intentional and wanton violation of those rights of Plaintiff, who is therefor entitled to an award of exemplary or punitive damages.

**Plaintiffs Decision to Rescind and Request for Return of Funds**

75. After protracted face to face discussions and subsequent telephonic and e-mail correspondence, during which Plaintiff's discovered the existence of the Undisclosed Government Order Against Defendant O'Halloran, the Undisclosed Conflicted Relationships, the Undisclosed Conflicted Transactions, the Undisclosed Terms of Material Contracts, and the Affirmative Misstatements as to Required Funding, Plaintiff's on or about June 8, 2004 decided not to provide any additional funding to Defendants Debit Direct, O'Halloran, Butterworth or Kelly and notified Defendants O'Halloran, Butterworth and Kelly of such decision through legal counsel David Strawn who, tendered the correspondence attached hereto as Exhibit 2, which by this reference is incorporated herein, notifying Defendant Debit Direct, its board of directors, Defendant Butterworth and their designated legal counsel Mr. Martin Simone of Plaintiff's desire to rescind the previous transaction and requesting a return of the USD$2,000,000 previously provided to Defendants Debit Direct, O'Halloran, Butterworth and Kelly as the result of their fraudulent and deceitful

misrepresentations and concealments.

**Defendant's Threats**

76. Upon being notified of such decision, Defendant Butterworth informed Plaintiff's that if Plaintiff did not provide the requested additional funding of USD$2,500,000, Skanco, acting though Defendant Kennedy, pursuant to rights granted Skanco in the previously Undisclosed Terms of the Material Contracts between Skanco and Debit Direct, would seize all of the assets of Debit Direct purchased with funds provided by Plaintiff and Plaintiff would receive no interest or other benefit as the result of their investment of USD$2,000,000.

**Defendants' Seizure of all Funds and Assets**

78. Defendants Debit Direct, O'Halloran, Butterworth and Kelly have refused and continue to refuse to return the USD$2,000,000 obtained from Plaintiff through their fraudulent and deceitful misrepresentations and concealments and have failed and refuse to provide Plaintiffs any interest in Debit Direct or the assets purchased with funds provided by Plaintiffs.

79. Plaintiff is informed and believes, and based thereon alleges, that, as threatened by Defendant Butterworth, Defendants Skanco, Butterworth and Kennedy have converted for their own use, the properties of Defendant Debit Direct purchased with funds provided by Plaintiff, with no offer of compensation or other benefit to Plaintiff, and are now using such assets solely for their own benefit.

**Defendants Conspiracy To Obtain Funds and Property through Acts of Fraudulent and Deceitful Misstatements and Concealments**

80. Plaintiff is informed and believes, and based thereon alleges, that, Defendant Debit Direct was and is, in fact, a company formed by Defendants O'Halloran, Butterworth and Kelly along with Defendants Skanco and Kennedy who, acting in concert, as shareholders, partners and owners of Skanco intended to divert and in fact have diverted substantially all of the funds invested by Plaintiff and/or property acquired with such funds, for their own benefit and gain, through the Undisclosed Conflicted Relationships, the Undisclosed Conflicted Transactions, the Undisclosed Terms of Material Contracts combined with their Affirmative Misstatement as to Required Funding (the "Conspiracy to Divert Funds"). Plaintiffs allege that this conclusion is supported by the following facts:

A. Skanco is an entity owned and operated by Defendants Butterworth Kennedy;

B. Defendant Butterworth was, through his position as a director and officer of Debit Direct, also in common control of Defendant Debit Direct with Defendants O'Halloran and Kelly;

C. Substantially all of the funds provided to Debit Direct were paid over to either Defendant O'Halloran or Skanco or to entities setup or controlled by Defendants Butterworth and Kennedy in the Undisclosed Conflicted Transactions through the Undisclosed Terms of the Material Contracts;

D. These Undisclosed Conflicted Transactions were effected through the Material Contracts that were entered into between Defendant Debit Direct, under the control and direction of Defendants Butterworth and Skanco, under the common control and direction of Defendants

27

Butterworth and Kennedy or individuals or entities under their common control, and the Material Contracts did not contain terms typically negotiated in an arms-length transaction, giving Skanco rights to seize all of the assets of Debit Direct purchased with funds provided by Plaintiff;

E.  Additional scam or dummy corporations, entities or individuals under the control of Defendants Butterworth and Kennedy, either directly or through Skanco, were used by Defendants Butterworth and Kennedy to cover their plot to divert funds invested in Debit Direct including RESTART (which was to be paid or was paid for hosting services) and Skanco Consulting Services (which was to be paid for service rendered by David Butterworth);

F.  Additionally, Defendants Butterworth and Kennedy inserted third party entities such as Defendant Domicilium as "partners" with Skanco and RESTART, in order to further divert funds invested by Plaintiff in Debit Direct and hide their scheme to obtain funds invested in Debit Direct by Plaintiff for their own benefit; and

G.  Defendants' deeds and acts and things herein alleged were done pursuant to and in the furtherance of said conspiracy. As funds were wired to either Defendant O'Halloran or Defendant Debit Direct by Plaintiff, ostensibly as an investment in Defendant Debit Direct, such funds, without the knowledge of Plaintiff, were quickly transferred and diverted to Defendants O'Halloran, Butterworth and Kelly or paid over

to their co-conspirators: Defendants Skanco, RESTART, Kennedy, Kermode, Domicilium and Allen pursuant to the Undisclosed Conflicted Transactions.

81. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants Debit Direct, O'Halloran, Butterworth, and Kelly knowingly and maliciously conspired together and with Defendants Skanco, RESTART, Kennedy, Kermode, Lloyd, Domicilium and Allen and agreed among themselves, for their own profit and gain, to induce Plaintiff to enter into the November 17, 2003 Memorandum and to transfer to them or place in their control a total of USD$2,000,000 by devising and carrying out a plan and scheme under which Plaintiff relied upon the fraudulent statements and/or concealments alleged herein. The fraudulent statements and/or concealments were calculated and engineered to, and did in fact, induce Plaintiff to enter into the November 17, 2003 Memorandum and to provide Defendants O'Halloran and Debit Direct a total of USD$2,000,000 without which Plaintiff would not have sustained the damages more particularly described herein.

**Defendants Use of Jurisdictional Means**

82. In the course of executing the Conspiracy to Divert Funds and in soliciting, offering to sell and selling the Securities herein after defined, and in obtaining funds totaling USD$2,000,000 from Plaintiff through fraudulent and deceitful misrepresentations and concealments, and in consummating the transactions described herein between Plaintiff and Defendants Debit Direct, O'Halloran, Butterworth, Kelly and their various partners, agents and co-

conspirators, Defendants Debit Direct, O'Halloran, Butterworth, Kelly, and their various partners, agents and co-conspirators, and each of them, either directly or indirectly utilized and employed interstate transportation, the United States mails, interstate telephone communications, and other instrumentalities of interstate commerce.

**Plaintiff's Performance**

83. Plaintiff has performed all covenants, and promises required to be performed on its part in accordance with the terms and conditions of the November 17, 2003 Memorandum described herein as evidenced by the November 28, 2003, the December 3, 2003 and the March 16, 2004 Wires.

## FIRST CAUSE OF ACTION

Violations of Section 10(b) of the Exchange Act and

Rule 10b-5 Promulgated Thereunder

(Against All Defendants)

84. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 83 of the Complaint as if set forth herein.

85. The shares of Debit Direct offered and sold to Plaintiffs pursuant to solicitations by Defendants O'Halloran, Butterworth and Kelly, acting as officers and directors of Debit Direct, in furtherance of the Conspiracy to Divert Funds, as further evidenced in the November 17, 2003 Memorandum, are securities, as defined in Section 2(1) of the Securities Act [15 U.S.C. §77b(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. §78c(a)(10)].

86. In soliciting, offering and selling the Securities to Plaintiff and thereby obtaining funds totaling USD$2,000,000 from Plaintiffs through the planning and execution of the Conspiracy to Divert Funds, Defendants Debit Direct, O'Halloran, Butterworth, Kelly, acting as officers and directors of Debit Direct along with Butterworth's partners and co-conspirators Skanco, Kennedy, RESTART Lloyd, Kermode, Domicilium, Allen and Walsh by use of the means and instrumentality of interstate commerce or the use of the mails violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) Employed devices, schemes and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; and

(c) Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff

87. Defendants Debit Direct and O'Halloran, Butterworth and Kelly, acting as officers and directors of Debit Direct along with Butterworth's partners and co-conspirators Skanco, Kennedy, RESTART, Lloyd, Kermode, Domicilium, Allen and Walsh:

(a) Employed devices, schemes, and artifices to defraud Plaintiff through the development and execution of the Conspiracy to Divert Funds, a plan hatched by Defendants Skanco, Butterworth and Kennedy, which was carried out by their co-conspirators Defendants O'Halloran, Kelly, RESTART, Lloyd and Kermode, Domicilium, Allen and Walsh: (i) through

31

the formation of a front entity, Defendant Debit Direct, formed by Defendants O'Halloran, Butterworth and Kelly for the purpose selling its Securities to Plaintiff, (ii) upon sale of the Securities, by diverting the USD$2,000,000 obtained from Plaintiff through the sale of Debit Direct's Securities, primarily to the benefit of Skanco, Butterworth and Kennedy and their co-conspirators, O'Halloran, Kelly, RESTART, Lloyd, Kermode, Domicilium and Allen. This plan was effected by Defendants through the use of the fraudulent Misstatement of the Required Funding ("Material Misrepresentation") and (iii) the concealment of the Undisclosed Conflicted Relationships, Undisclosed Conflicted Transactions, Undisclosed Terms of Material Contracts. In addition, Defendants Debit Direct, O'Halloran, Butterworth and Kelly, as officers directors and in the case of O'Halloran and Butterworth, shareholders of Defendant Debit Direct, failed to disclose to Plaintiff the O'Halloran Disqualification, (the " Omissions or Concealment of Material Facts");

(b) In furtherance of their Conspiracy to Divert Funds, Defendant Debit Direct, through its officers and directors O'Halloran, Butterworth and Kelly made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading. Specifically, the Affirmative Misstatement Regarding Required Funding, as evidenced by the November 17, 2003 Memorandum were: (i) false when made orally to Plaintiff by Defendant Debit Direct, through its officers and directors