UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IM PARTNERS and its General Partner DNAIEL E. MARINO, | ) ) ) | Civil Action No. 3:04-CV-1651 (JCH) |
| Plaintiffs, | ) ) | **NOTICE OF** **MOTION TO DISMISS** |
| vs. | ) ) | |
| DEBIT DIRECT LIMITED, et al. | ) ) | |
| Defendants | ) | |

To:   Thomas J. Williams, Esq.
      399 East Putnam Avenue, Suite 102
      Cos Cob, CT 06807
      **Attorneys for Plaintiffs**

      David J. Elliot, Esq.
      Terence J. Gallagher, III
      Day, Berry & Howard
      One Canterbury Green
      Stamford, CT 06901-2047
      **Attorneys for Defendants David Butterworth**
      **Barry Kennedy, Debit Direct Limited,**
      **Skanco Business Systems Limited and**
      **Restart Limited**

Please take notice that on February 28, 2005, at 10:00 a.m., or as soon thereafter as

counsel can be heard, in Courtroom of the Honorable Janet C. Hall, United States Court House,

915 Lafayette Blvd., Bridgeport, CT, the defendant Jack O'Halloran will bring the above motion

on for hearing.

Dated:  January 31, 2005

THE DEFENDANT
JACK O'HALLORAN


BY /s/ _____

        PAUL L. BROZDOWSKI
        Law Offices of Paul Brozdowski, LLC
        10 Middle Street, 7th Floor
        Bridgeport, CT 06604
        Juris No.  412352
        CT Bar:  02258
        (203)367-9447

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IM PARTNERS and its General Partner DNAIEL E. MARINO, | ) ) ) | Civil Action No. 3:04-CV-1651 (JCH) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **MOTION TO DISMISS** |
| DEBIT DIRECT LIMITED, et al. | ) ) | |
| Defendants | ) | |

Jack O'Halloran, one of the defendants herein, by Paul L. Brozdowski, his attorney, moves the court to dismiss the plaintiffs' complaint as to the moving defendant only, on the ground that the complaint fails to state a claim against this defendant on which relief can be granted, and to dismiss this defendant from the action, with prejudice.

Dated:  January 31, 2005

THE DEFENDANT
JACK O'HALLORAN

BY /s/ _____
PAUL L. BROZDOWSKI
Law Offices of Paul Brozdowski, LLC
10 Middle Street, 7th Floor
Bridgeport, CT 06604
Juris No.  412352
CT Bar:  02258
(203)367-9447

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IM PARTNERS and its General Partner | ) | Civil Action No. |
| DANIEL E. MARINO, | ) | 3:04-CV-1651 (JCH) |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| DEBIT DIRECT LIMITED, et al. | ) | |
| | ) | |
| Defendants | ) | |

**Defendant Jack O'Halloran's
Memorandum of Law
in Support of His Motion to Dismiss**

**1.    Introduction**

This Complaint alleges fraudulent misrepresentations by O'Halloran - without alleging a single fact to support the allegation.

It alleges that O'Halloran fraudulently induced the plaintiffs to sign a document - but that document did not commit the plaintiffs to do anything at all.

It alleges the fraudulent sale by O'Halloran of stock in Debit Direct - without ever dirctly claiming that the plaintiffs purchased the stock and/or are shareholders of Debit Direct.

It alleges a total amount paid for the stock - $2,000,000 - that documentary evidence proves to be exaggerated by half a million dollars.

1

The plaintiffs claim they have "information" causing them to "believe" they were victims of an organized conspiracy - but they state neither the information nor the basis for the belief.

They claim that O'Halloran led the conspiracy - but specifically omit O'Halloran from the list of those allegedly profiting from the scheme, thus providing him with no motive to do so.

They claim O'Halloran's conflicts of interest led him to breach a fiduciary duty - and then do not identify a single conflict of interest.

Finally, the plaintiffs claim that the only results of this monstrous (albeit imaginary) conspiracy were certain business decisions of Debit Direct - that were perfectly legal and reasonable.

What is now before this Court has all of the earmarks of a strike suit pure and simple! The Complaint against the defendant Jack O'Halloran should be dismissed forthwith, and the Court should apply every sanction in its arsenal against the plaintiffs and their counsel for bringing this frivolous action.

**2.**     **The United States Supreme Court does not allow strike suits to survive a motion to dismiss.**

According to Chief Justice Rehnquist, a strike suit is one that (a) has very little chance of success at trial, (b) has a settlement value to the plaintiffs out of any proportion to its prospect of success at trial, and (c) permits the plaintiffs to make use of liberal Federal discovery procedures to prolong litigation and entice defendants into settlement of otherwise spurious claims so long as the plaintiffs can prevent the suit from being resolved against them by dismissal or summary judgment. **Blue Chip Stamps v. Manor Drug Stores,** 421 U.S. 723, 740 (1975).

The Second Circuit can recognize a strike-suit-Complaint when it sees one. It is "prolix," "discursive," "lengthy," "is an 'everything but the kitchen sink' type of pleading which would give plaintiff's attorney carte blanche in the area of liberal federal discovery," contains "generalities" and "conclusory allegations," and "is anything but the simple, direct, and concise statement mandated by Fed.R.Civ.P. 8(e)." **Decker v. Massey-Ferguson, Ltd.,** 681 F.2d 111 at pp. 114 and 115 (2nd Cir. 1982). The 59-page, 182-paragraph Complaint herein against O'Halloran and his co-defendants fits precisely the strike-suit paradigm identified by the **Blue Chip** and **Decker** courts.

3.   **It is the application of Federal pleading rules - which these plaintiffs have ignored - that protects defendants like O'Halloran from being victimized by strike suits.**

When faced with this kind of prolix and discursive Complaint, the patience of the Court is required because "it is important that the wheat in plaintiff's pleading be separated from the chaff." **Decker**, supra, at p. 115.

Whether or not such separation produces any "wheat" at all, depends, according to **Blue Chip** and its progeny, on the complaint's compliance with Federal rule 9(b) - the directive to state fraud claims with particularity. The first clue that a complaint lacks factual particularity is its failure to comply with Federal Rule 8(e) - which demands that plaintiffs state their claims concisely. **Decker**, *supra*. The Complaint herein defies both rules. Rule 9(b) is designed "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." **O'Brien v. National Property Analysts Partners**, 936 F.2d 674, 676 (2d Cir.

3

1992).

4.      **The Complaint alleges "fraudulent misrepresentations" without quoting any representations at all.**

Starting at paragraph 44 of this 182-paragraph Complaint, there appears by actual count 56 separate references to fraudulent misrepresentations by O'Halloran that are labeled "Prospects of Debit Direct," "Further Representations Regarding the Prospects of Debit Direct," and "Required Funding." Not a single one of these 56 allegations includes what was actually said or in what respect it was untrue, let alone intentionally misleading. (Paragraph 44 simply identifies, "numerous oral representations respecting...," a phrase that is not amplified in any of the Complaint's remaining 48 pages.)

Second Circuit standards rejecting such verbose and conclusory pleadings are not hard to come by:

> This Court has read Rule 9(b) to require that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). Similarly, the PSLRA, which applies in this respect only to claims brought under the Exchange Act, requires that any securities fraud complaint alleging misleading statements or omission of material fact must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). As the district court observed, the particularity requirement of Rule 9(b) applies to securities fraud claims brought under Section 10(b) and Rule 10b-5.

> **Rombach v. Chang**, 355 F.3d 164, 170 (2nd cir. 2004)

The plaintiffs allege that O'Halloran discussed the "prospects" of Debit Direct and then

4

append to this allegation of forward-looking statements merely the conclusion that this was done

with fraudulent intent.  But the **Rombach** court specifically rejected this "pleading technique."

> As this Court has observed, a "pleading technique [that] couple[s] a factual
> statement with a conclusory allegation of fraudulent intent" is insufficient to
> "support the inference that the defendants acted recklessly or with fraudulent
> intent." <u>Shields [v. Citytrust Bancorp, Inc],</u> 25 F.3d at 1129. Plaintiffs do not
> allege facts and circumstances that would support an inference that defendants
> knew of specific facts that are contrary to their public statements.

> **Rombach,** *supra*, 335 F3rd at 176.

Characteristic of the Complaint's deceptively non-specific pleading technique is

paragraph 46:

> 46.  Thereafter, Plaintiff and its general partners were contacted on numerous
> occasions by Defendants O'Halloran, Butterworth and Kelly...in each case making
> further representations...regarding the prospects of Debit Direct.

The Second Circuit does not look favorably on this type of pleading.

> With regard to connecting particular representations to particular defendants, the
> complaint alleges numerous representations attributed only to the "defendants."
> For example, paragraph 68 of the complaint alleges: "During the course of the
> project, defendants continually misrepresented to the plaintiffs and the class the
> cost, status and expected completion date of the project." * * * Such allegations,
> which fail to specify the time, place, speaker, and sometimes even the content of
> the alleged misrepresentations, lack the "particulars" required by Rule 9(b). *See,*
> *e.g., Denny v. Barber,* 576 F.2d 465, 469 (2d Cir. 1978); *Segal v. Gordon,* 467
> F.2d 602, 608 (2d Cir. 1972).

> **Luce v. Edelstein**, 802 F.2d 49, 54 (2nd Cir. 1986)

**5.**    **The Complaint alleges a "conspiracy" produced by the imagination of the plaintiffs,**

   **not by a plot conceived on the Isle of Man.**

After identifying the corporate role of each defendant, the Complaint, at paragraph 19,

begins to outline the structure of the alleged conspiracy.  What makes the individual activities of

each defendant a component of a conspiracy is that each, "in doing the things herein alleged was acting within the course and scope of such agency and employment <u>and with the permission and consent of his co-defendants</u>." [Emphasis added.] This is repeated verbatim and attributed, *seriatim*, to each defendant in paragraphs 21, 23, 26, 28, 30, 32, and 34.  The activities alleged to constitute the "conspiracy" are described in paragraphs 35, 36, 37, 38, 39, 40, 41, 42, and 43. These 17 paragraphs purporting to define both the structure and operation of a conspiracy are <u>all alleged</u> "<u>upon information and belief</u>."

The "fact" of a conspiracy is summarized in paragraph 81: "Plaintiff is informed and believes and based thereon alleges that each of the defendants...agreed among themselves...to induce Plaintiff...to transfer to them...$2,000,000 by devising and carrying out a plan..."

If a fraudulent conspiracy is alleged pursuant to Rule 10(b)-5, and the elements of the fraudulent conspiracy are stated "upon information and belief," then the particularity requirements of Fed.R.Civ.P 9(b) are satisfied only if the Complaint states with particularity all the facts on which that belief is formed.  **Rombach v. Chang**, *supra*, 355 F.3d at170. The imagination of the plaintiffs or their counsel  may have produced a "belief" in a conspiracy, but their Complaint is singularly lacking in "information" to support it.

### 6.    <u>Even upon information and belief, the Complaint does not allege a "conspiracy."</u>

There are three elements to a conspiracy: (1) an intent that illegal conduct be performed; (2) an agreement with one or more persons to engage in or cause the performance of that conduct; and (3) the commission of an overt act in pursuance of the agreement by any one or more of the persons who made the agreement.  The first element is that the defendant had the

6

intent that conduct constituting the illegal act be performed.  (See: **State v. Morales**, 84 Conn. App. 283 (2004)).

Because the Complaint is virtually devoid of the concise statements required by Rule 8(e) it is well nigh impossible to discern what conduct the Plaintiffs claim to be illegal on the part of the defendants.  As best can be deciphered, it is that Debit Direct "diverted" funds in its treasury by purchasing goods and service from three of the defendant corporations (paragraphs 35 and 61).

"Diversion: The unauthorized used of funds." **Black's Law Dictionary**.  The Complaint does not allege that the use of funds described in paragraphs 35 and 61 was "unauthorized." The most permissive reading of the Complaint could infer a claim that O'Halloran "mismanaged" the funds but (a) the Complaint does not say that and (b) if it did, the plaintiffs' remedy would be a shareholders derivative action, claiming no direct compensation to the plaintiffs.  "In the event the corporate insider breaches his fiduciary duty, [the plaintiffs] may bring suit in the name of the corporation itself to make the corporation, and indirectly themselves, whole." **O'Connor & Assoc. v. Dean Witter Reynolds, Inc.**, 529 F.Supp. 1179, 1184 (S.D.N.Y. 1981).

 Absent a concise statement, factually supported, that O'Halloran planned with others to do something illegal, this Complaint appears designed, like all strike suits, simply to encourage settlement or the extensive discovery procedures required to force the plaintiffs to state exactly what they mean.

7.      **The "red herring" of alleging an "omission of a material fact"**

Typical of the Complaint's desperate search for a cause of action where none in fact can

be discovered is the spurious claim that the plaintiffs were defrauded by O'Halloran's failure to disclose the fact that some years ago (how long ago is not mentioned) he was reprimanded by a regulatory agency in Ireland!  The notion that IM Partners would not have contemplated purchasing a controlling interest in an Isle of Man corporation in which O'Halloran would  have absolutely no executive authority[1] if they had known that O'Halloran had in the distant past some dispute with corporate regulators in Ireland is so self-evidently preposterous as to be almost unworthy of future comment.  The purpose of "full disclosure" is to ensure "that investors get what they think they are getting." **Chemical  Bank v. Arthur Andersen & Co.,** 726 F.2d 930, 943 (2d Cir.1984). Rule 10b-5 thus makes unlawful any material omission regarding the value of the securities, not the biography of a current corporate officer who is no longer to have a role in the management of the company.

As will be shown below, it appears that at the time they made their "investment," IM Partners intended to re-structure Debit Direct - probably transforming it from a corporation into a limited partnership, but at the very least into a corporation in which O'Halloran would become the passive holder of preferred stock that had no voting power.

> In a corporate setting, the most obviously material information would be facts concerning the issuer, the corporation. In a limited partnership setting, information about the issuer — the partnership — would be of no value if the partnership did not predate the investor's entry into the venture, and it might be of little value even if the partnership did have a history of operation. In the latter case, information about the partnership's previous record would be material, but it would not, alone, be sufficient. The information crucial to the investment decision would be that concerning the entity which was responsible for the success or failure of the enterprise.

---

[1]See Section 10 of this Memorandum, *infra*.

8

**Securities & Exch. Com'n v. Murphy,** 626 F.2d 633, 643 (9th Cir. 1980)

According to the Memorandum that the plaintiffs allege they "relied upon" to make their

investment (footnote1 herein), it was the plaintiffs themselves who were to be "responsible for

the success or failure of the enterprise." Paradoxically, the Complaint, taken as a whole, can be

read to assert that  the plaintiffs breached a fiduciary duty to themselves!

8.      **The plaintiffs' claim of "investing $2,000,000 in Debit Direct" is intentionally false**

     **and misleading.**

It is undisputed that the plaintiffs have spent $2,000,000.  But one-quarter of that amount

- $500,000 - was not an investment in Debit Direct.  That the plaintiffs know this to be true and

have intentionally misrepresented the amount of their investment (further evidence of a strike

suit) can be inferred by carefully reading the deliberate ambiguity with which the claim is stated

in the Complaint.  (Emphasis added in each paragraph below.)

> Paragraph 49. "...on or about November 28, 2003 Plaintiff wired to
> Defendant Debit Direct a total of $500,000..."

> Paragraph 49. "...on or about December 3, 2003 plaintiff wired to
> Defendant O'Halloran an additional $500,000..."

> Paragraph 51.  "...on or about March 16, 2004, Plaintiff wired an
> additional $1,000,000 to Defendant Debit Direct..."

> Paragraph 52.  "...Plaintiff has wired a total of $2,000,000 collectively to
> Defendants O'Halloran and/or to Debit Direct."

What is carefully omitted from the Complaint is the fact that on the day before the

December 3 wire to O'Halloran, Marino and O'Halloran agreed that IM Partners would invest

$500,000 in an entirely separate joint venture between them and having nothing whatsoever to do

with Debit Direct. (Exhibit 1 annexed hereto.)   That the December 3 wire was sent in accordance

with <u>this</u> joint venture is evidenced not only by the date of the second $500,000 wire, but by the

implicit admission contained in the too-clever-by-half-wording of the Complaint.

9.     **<u>Although the claim that O'Halloran had a conflict of interest is central to the</u>**

            **<u>plaintiffs' entire "conspiracy" thesis, a close reading discloses that the Complaint</u>**

            **<u>does not allege that such a conflict in fact existed - or that O'Halloran himself would</u>**

            **<u>benefit from the alleged conspiracy.</u>**

This is what the plaintiffs hope the Court will think they are alleging - if the Court reads

all 182 paragraphs of the Complaint without thinking too much about them: that O'Halloran

pretended to be acting on behalf of Debit Direct, that he persuaded the plaintiffs to participate in

Debit Direct, but that all of the time O'Halloran was really trying to further his own interest in

companies other than Debit Direct, and that this conflict of interest was both a breach of his

fiduciary duty to the plaintiffs and the linchpin of a conspiracy.

In one form or another, this concept is scattered so liberally throughout 182 paragraphs

that it is easy to miss the fact that the Complaint defines the relationship among the defendants in

such a way as to expressly state that O'Halloran had no conflicts of interest whatsoever.  Absent

a conflict of interest, O'Halloran's alleged misbehavior would be entirely un-motivated, and

without his participation, the alleged conspiracy could not have taken place.

Not a single fact is alleged in the Complaint showing, implying, or inferring that

O'Halloran stood to benefit from what the plaintiffs claim was a "diversion" of Debit Direct

assets.  Indeed, exactly the opposite would be true since according to the Complaint the <u>only</u>

financial interest O'Halloran had in <u>any</u> of the four defendant companies was in Debit Direct!
And there is no allegation that Debit Direct had any interest whatsoever in any other corporate
defendant. Since there are no facts alleged that O'Halloran would benefit from the purported
fraud, the plaintiffs' "allegations here fail to give rise to the requisite strong inference of
fraudulent intent." **Campaniello Imports v. Saporiti Italia**, 117 F.3d 655, 663 (2nd Cir. 1997).

According to the Complaint, O'Halloran is singularly free of any multiple corporate roles
and all conflicts of interest. He is identified by the plaintiffs solely and exclusively as the
majority shareholder and controlling officer of one company, Debit Direct, and his activities,
according to the Complaint, consisted exclusively of attempting to finance the development of
that company.

The alleged hidden relationships that fuel the so-called conspiracy are described in variant
form as "Undisclosed Conflicted Transactions," and "Undisclosed Conflicted Relationships,"
terms which are repeated, by actual count, 43 times beginning at paragraph 62 in the 182-
paragraph Complaint.[2] But the simple fact is, there were no conflicts to disclose.

"In short, the complaint identifies no personal interest sufficient to establish motive, and
the district court properly concluded that plaintiffs' complaint against individual defendants must
be dismissed for failure to plead scienter." **Rombach v. Chang,** *supra*, 355 F.3d 164, at 177.

"In the absence of any allegation of facts amounting to fraud or *scienter,* the claims in...
the complaint that defendant's... account was fraudulent.., being mere conclusions, are

---

[2]The capitalization of these terms, employed throughout the Complaint, would not survive the magic
marker of any respectable editor of any sort of text. Here, though, something else is afoot. The device appears to be
an effort to pretend that these are either terms of art or titles of documents or headings for lists of factual
allegations. In truth, they are none of these.

insufficient to save this complaint. We therefore affirm [the dismissal]." **Shemtob v. Shearson,**

**Hammill & Co.,** 448 F.2d 442, 445 (2nd Cir. 1971).

10.     **The Memorandum of Understanding is deliberately employed by the plaintiffs in**

       **such a way as to conceal the fact that they lack standing to pursue any of the**

       **11 causes of action alleged in the Complaint.**

As further evidence that this is indeed a strike suit, the Court is hereby introduced to the

Memorandum of Understanding signed by O'Halloran and Marino on November 17, 2003.[3]  The

Memorandum, attached to and made a part of the Complaint, first enters the plaintiffs' story at

paragraph 47.  It re-appears 34 times sprinkled randomly through the Complaint's remaining 135

paragraphs, repeatedly alleging essentially that (1) Marino was fraudulently induced to sign the

Memorandum and (2) the funds were sent to Debit Direct in accordance with the terms and

conditions of that Memorandum.

On its face, the Memorandum contains fairly simple provisions. It appears to

contemplate a purchase by IM Partners of a 45% stake in Debit Direct.  This is to be

accomplished by O'Halloran turning back one half of the shares he owns in Debit Direct, and IM

Partners purchasing from Debit Direct what would now become treasury stock. O'Halloran

himself is not to be paid for the stock he makes available to Debit Direct, nor  is he to receive

any portion of the IM funds to be sent to Debit Direct.  IM Partners is to have exclusive control

---

[3]"Every good case requires a mystery document."  **Westchester Fire Insurance Company v. Tantalo,** 273 F. Supp. 7,12, fn 5 (1967).  This may not be a good case, but this Memorandum does suggest a mystery: what did the plaintiffs think they were doing when they sent $1,500,000 to the Isle of Man?

over the management of Debit Direct.  O'Halloran is henceforth to be a passive investor and will have no official capacity or decision-making authority within the company.  Since  "<u>IM shall solely dictate the final structure</u> of Debit Direct and this proposed transaction and the location of Debit Direct," there is a clear implication that IM Partners intends to re-organize the company into what the other provisions of the Memorandum strongly suggest will be a limited partnership. The business of Debit Direct is not described in the Memorandum (nor is it defined in the Complaint); the timing of the transfer of funds by IM to Debit Direct is not specified; and the Memorandum does not refer to what Debit Direct is to do with the IM funds.

The Memorandum concludes by stating specifically that it is "not binding on the parties" and that they will not be so bound until a formal contract is negotiated and signed, which is to occur within six weeks, i.e., by December 31, 2003.  One is entitled to assume - although a simple, concise statement to this effect is strangely absent from the Complaint's verbose narrative - that no formal contract was ever signed.  Clearly, the November 17 Memorandum is not an enforceable contract both because it expressly states it is not and, "in the absence of consideration an executory promise is unenforceable."  **State National Bank v. Dick,** 164 Conn. 523, 529 (1973).

The plaintiffs apparently believe that the Memorandum <u>does</u> provide them with contractual rights.  Thus paragraphs 83, 121, and 146 of the Complaint:

> 83. Plaintiff has performed all <u>covenants</u> and <u>promises</u> <u>required</u> to be performed on its part in accordance with the <u>terms</u> <u>and</u> <u>conditions</u> of the November 17, 2003 Memorandum described herein as evidenced by the November 28, 2003, the December 3, 2003 and the March 16, 2004 Wires. [Emphasis added.]

121. ...Plaintiff is entitled to declaratory judgment of the Court rescinding the November 17, 2003 Memorandum

146. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain its rights and duties under the agreements described herein and more specifically the November 17, 2003 Memorandum...

The implicit suggestion of paragraph 83 is that the Memorandum became enforceable when the plaintiffs wired funds to Debit Direct. This is essentially a claim of contract "by estoppel."

"Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." *Bozzi v. Bozzi,* 177 Conn. 232, 242. **State National Bank v. Dick,** *supra*

But the Memorandum specifically anticipates such a claim - and prohibits it: "...this Memorandum...is not binding on the parties hereto and <u>may not be relied upon as the basis of a contract by estoppel</u>."

Further, the Complaint's description of the activities of the defendants alleged to comprise the "diversion" of Debit Direct funds is set forth in paragraph 61B. The dates on which the acts constituting the diversion supposedly took place are notably not alleged. Since plaintiffs claim to have sent funds to Debit Direct beginning on November 28, 2003, and ending on March 16, 2004, (paragraphs 48, 51) plaintiffs would have had fully four months to discover how those funds were being spent by the company. "It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring such

14

knowledge." **Spear-Newman, Inc. v. Modern Floors Corp.**, 149 Conn. 88, 91-92.  Because the plaintiffs rely upon the claimed subsequent discovery of the "diversion" to reach their retrospective conclusion of fraudulent misrepresentation, this would appear to be what the court in **Denny v. Barber**, 576 F.2d 465, 470 (2nd Circ. 1978) dismissively labeled as "an example of alleging fraud by hindsight."

The only permissible conclusion with respect to the legal effect of these transactions is that as a matter of law the transmittal by the plaintiffs of funds to Debit Direct constituted an offer to purchase shares in the company.

Query: was the offer accepted?  Plainly, the plaintiffs do not know.  That is why they ask the Court, in paragraph 146 of the Complaint,  for what sounds like a declaratory judgment, but is really a request for an advisory opinion.

Arguably, the offer might have been accepted because Debit Direct kept the money.  On the other hand, stock in Debit Direct was never sent to the plaintiffs, and the plaintiffs do not allege that they asked for the shares, only that they demanded a return of the funds or an un-specified interest in either the company or its assets (paragraph 78).

It is not the responsibility of the defendants or of the Court to determine the status of the plaintiffs in this litigation.  While alternate possibilities exist, the simple truth is that the Complaint does not include a simple, concise statement that IM Partners purchased shares in Debit Direct.

Absent such a direct allegation, and in light of the inherent ambiguity of the Memorandum and the vagueness with which its role in these transaction has been pleaded, there

15

can be no interpretation other than that the plaintiffs have as a matter of law failed to establish

that they have standing to bring this lawsuit.  As explained, with ample citation, by a District

Court in the case of **American Nursing Care of Toledo v. Leisure,** 609 F. Supp. 419, 429

(N.D.Ohio 1984):

> The Court finds that since no definitive promises or agreements were made to
> issue the stock, there is no fraud claim. As discussed above, the plaintiffs were not
> purchasers of securities. Accordingly, they have no standing to assert antifraud
> claims under any of these sections. *Blue Chip Stamps v. Manor Drug Stores,* 421
> U.S. 723, 750-55, 95 S.Ct. 1917, 1932-34, 44 L.Ed.2d 539 (1975); *Southeastern
> Waste Treatment, Inc. v. Chem-Nuclear Systems, Inc.,* 506 F. Supp. 944 (N.D.Ga.
> 1980); *Wolfson v. Litton Industries, Inc.,* 336 F. Supp. 1039 (S.D.N.Y. 1971).

This is not to say that IM Partners may not be entitled to a return of the $1,500,000 from

Debit Direct (but not from O'Halloran) it offered to pay for the shares.  But that is a far cry from

a 182-page strike-suit complaint of fraud!

**11.     The Second Cause of Action is a particularly egregious display of the mis-use of**

**Federal pleadings by the plaintiffs.**

None of the 11 causes of action trumpeted by the Complaint can withstand rational

analysis.  But of all them, the claim under the Connecticut Unfair Trade Practices Act is the

outstanding example of the frivolous nature of this entire loquacious and rambling pleading.  For

nearly 20 years the Connecticut courts have held uniformly that "CUTPA does not apply to

deceptive practices in the purchase and sale of securities." **Russell v. Dean Witter Reynolds,**

**Inc.**, 200 Conn. *172* (1986).  This ruling has been confirmed as recently as last year. **McCann v.**

**Screnci,** 2003 Ct. Sup. 12284, 36 CLR 68 (Nov. 26, 2003).  There is simply no reason other than

an attempt to intimidate O'Halloran (and his co-defendants)  for the inclusion of this, among 10

16

other frivolous causes of action.

**12.**   **Conclusion**

As demonstrated above, the fraud and conspiracy claims propounded by this Complaint are spurious in the extreme.  They lack not only particularity, but rationality. On a motion to dismiss it is only well pleaded factual allegations that the Court is obliged to accept as true. **Papasan v. Allain**, 478 U.S. 263 (1986), **Olkey v. Hyperion 1999 Term Trust Inc.,** 98 F.3d 2, 5 (2nd Cir. 1996).

Because the plaintiffs have asserted Federal jurisdiction only through their 10b-5 claim, and because that claim cannot be sustained,  the Court has no basis for exercising supplemental jurisdiction over the remaining pendant state claims, and all of the 11 causes of action in the Complaint should be dismissed. **Harsco Corp. v. Segui**, 91 F.3d 337, 348 (2nd Cir. 1996).

The motion herein should be granted.

Dated:  January 31, 2005

<div style="margin-left: 40%;">

THE DEFENDANT
JACK O'HALLORAN


BY _____
　　PAUL L. BROZDOWSKI
　　Law Offices of Paul Brozdowski, LLC
　　10 Middle Street, 7th Floor
　　Bridgeport, CT 06604
　　Juris No.  412352
　　CT Bar:  02258
　　(203)367-9447

</div>

<div style="text-align:center;">17</div>

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IM PARTNERS and its General Partner | ) | Civil Action No. |
| DNAIEL E. MARINO, | ) | 3:04-CV-1651 (JCH) |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| DEBIT DIRECT LIMITED, et al. | ) | |
| | ) | |
| Defendants | ) | |

## CERTIFICATION OF SERVICE

I certify that I have mailed a copy of the foregoing **Defendant Jack O'Halloran's Notice of Motion, Motion to Dismiss, and Memorandum of Law In Support of his Motion to Dismiss** via first class mail, postage prepaid this 31st day of January, 2005 to:

Thomas J. Williams, Esq.
399 East Putnam Avenue, Suite 102
Cos Cob, CT 06807
**Attorneys for Plaintiffs**

David J. Elliot, Esq.
Terence J. Gallagher, III
Day, Berry & Howard
One Canterbury Green
Stamford, CT 06901-2047
**Attorneys for Defendants David Butterworth Barry Kennedy, Debit Direct Limited, Skanco Business Systems Limited and Restart Limited**

18

Dated:  January 31, 2005

                      THE DEFENDANT
                      JACK O'HALLORAN

                      BY _/s/_____

                          PAUL L. BROZDOWSKI
                          Law Offices of Paul Brozdowski, LLC
                          10 Middle Street, 7th Floor
                          Bridgeport, CT 06604
                          Juris No.  412352
                          CT Bar:  02258
                          (203)367-9447