UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IM PARTNERS and its General Partner | : | CIVIL ACTION NO. |
| DANIEL E. MARINO, | : | 3:04-CV-1651 (JCH) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DEBIT DIRECT LIMITED, JACK O'HALLORAN, | : | |
| DAVID BUTTERWORTH, MICHAEL KELLY, | : | |
| SKANCO BUSINESS SYSTEMS LIMITED, | : | |
| BARRY KENNEDY, RESTART LIMITED, IAN | : | |
| LLOYD, ANDREW KERMODE, DOMICILIUM | : | |
| (IOM) LIMITED, JOHN ALLEN, and PATRICK | : | |
| WALSH | : | |
| | : | |
| Defendants. | : | FEBRUARY 7, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEBIT DIRECT DEFENDANTS' MOTION TO DISMISS**

Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901
(203) 977-7300

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND FACTS ........................................................................................ 3

    The Debit Direct Defendants .......................................................................... 3

    Plaintiff's Meetings with O'Halloran ............................................................. 4

    The November 17, 2003 Memorandum ......................................................... 4

    Wires by IM Partners ...................................................................................... 5

    Alleged Omissions .......................................................................................... 6

    Conduct After Plaintiff's Wires ...................................................................... 6

ARGUMENT ......................................................................................................... 7

    I.     THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEBIT
          DIRECT DEFENDANTS .......................................................................... 7

          A.     Defendants Have Insufficient Contacts With The United States To
                Permit The Exercise Of Personal Jurisdiction ........................................... 7

          B.     The Exercise Of Personal Jurisdiction Over The Debit Direct
                Defendants Would Violate Constitutional Principles Of Due
                Process ..................................................................................................... 11

    II.    THE COMPLAINT MUST BE DISMISSED AS TO EACH OF THE ISLE
          OF MAN DEFENDANTS BECAUSE PLAINTIFF FAILED TO MAKE
          PROPER SERVICE OF PROCESS .......................................................... 14

    III.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION
          10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 ............................. 17

          A.     Rule 12(b)(6) Standards .......................................................................... 18

          B.     The Complaint Fails to Allege With The Requisite Particularity
                That Defendants Made False And Misleading Statements Of Fact ......... 18

          C.     The Complaint Fails To Allege With Particularity That The Debit
                Direct Defendants Acted With The Requisite Scienter ........................... 21

              1.     The Complaint Does Not Adequately Allege Motive And
                    Opportunity To Commit Fraud .................................................... 22

              2.     The Complaint Does Not Adequately Allege Facts Constituting
                    Strong Circumstantial Evidence Of Conscious Misbehavior Or
                    Recklessness .............................................................................. 23

IV.   THE COURT SHOULD NOT EXERCISE JURISDICTION OVER
      REMAINING STATE LAW CLAIMS ............................................................ 24

V.    THE REMAINING STATE LAW CLAIMS MUST BE DISMISSED FOR
      FAILURE TO STATE A CLAIM ................................................................... 25

      A.   The Remaining Claims Should Be Dismissed For Failure To Plead
           Fraud With Particularity ................................................................. 25

      B    The Court Should Dismiss The CUTPA Claim Because It Does Not
           Apply To Securities Transactions ..................................................... 26

      C.   Plaintiff's Claim For Negligent Misrepresentation Must Be Dismissed ... 28

      D.   Plaintiff's Breach Of Fiduciary Duty Claim Must Be Dismissed ............ 29

      E.   Plaintiff's Claim For Imposition Of A Constructive Trust Must Be
           Dismissed ..................................................................................... 29

      F.   Plaintiff's Claim For Unjust Enrichment Must Be Dismissed ................ 31

      G.   Plaintiff's Claim For Breach Of The Covenant Of Good Faith And
           Fair Dealing Must Be Dismissed ....................................................... 31

CONCLUSION ...................................................................................................... 33

# TABLE OF AUTHORITIES

## CASES

*Adams v. Wex*, 56 F. Supp. 2d 227 (D. Conn. 1999) ................................................. 8

*Ambrosino v. Rodman & Renshaw, Inc.*, 635 F. Supp. 968 (N.D. Ill. 1986) ......................... 29, 30

*Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85 (2d Cir. 1999), *cert. denied, 528 U.S. 188 (2000)* ................................................................................................. 18

*Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999) ............. 7

*Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir.), *cert. denied, 423 U.S. 1018 (1975)* ................................................................................................. 13

*Bolmer v. Kocet*, 6 Conn. App. 595, 507 A.2d 129 (1986) ........................................... 31

*Brass v. American Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) ................................. 29

*Brown v. Sandimo Materials*, 250 F.3d 120 (2d Cir. 2001) .......................................... 31

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ......................... 19

*Calder v. Jones*, 465 U.S. 783 (1984) .............................................................. 11

*Carden v. Arkoma Assoc.*, 494 U.S. 185 (1990) ...................................................... 8

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ............................................. 24

*Castellano v. City of New York*, 142 F.3d 58 (2d Cir. 1998) ....................................... 25

*Champaigne v. Scarso*, 1999 Conn. Super. LEXIS 2429 (Conn. Super. Ct. Aug. 25, 1999) ................................................................................................. 27

*Christian Science Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2001) ................................................................................... 12

*D'Addario v. Geller*, 264 F. Supp. 2d 367 (E.D. Va. 2003) ......................................... 12

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir.), *cert. denied, 519 U.S. 1007 (1996)* ................................................................................................. 18

*DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir. 2001) ............................. 7

*Dubinsky v. Citicorp Mortg., Inc.*, 48 Conn. App. 52, 708 A.2d 226 (1998) .............................. 32

*Eickhorst v. American Completion & Dev. Corp.*, 706 F. Supp. 1087 (S.D.N.Y. 1989) ............. 19

*Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998) ........................................ 16

*FDIC v. Milken*, 781 F. Supp. 226 (S.D.N.Y. 1991) ......................................................... 9, 12, 13

*Faulkner v. Verizon Communications, Inc.*, 156 F. Supp. 2d 384 (S.D.N.Y. 2001) ................... 21

*Ferber v. Travelers Corp.*, 785 F. Supp. 1101 (D. Conn. 1991) .................................................. 22

*Field v. Trump*, 850 F.2d 938 (2d Cir. 1988), *cert. denied,* 489 U.S. 1012 (1989)..................... 24

*First Capital Asset Management, Inc. v. Satinwood Inc.*, 385 F.3d 159 (2d Cir. 2004).............. 25

*Frazier v. VitalWorks*, 341 F. Supp. 2d 142 (D. Conn. 2004) ..................................................... 21

*Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994) ..................................................... 18

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000)......................................................... 18

*In re General Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119 (D. Del. 1988) ........ 20

*Glickman v. Alexander & Alexander Servs., Inc.*, 1996 WL 88570 (S.D.N.Y. Feb. 29,
1996) ............................................................................................................................................ 22

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)....................................... 30

*Greystone Comty. Reinvestment Assocs., Inc. v. First Union Nat'l Bank*, 2002 U.S. Dist.
LEXIS 2529 (D. Conn. Jan. 25, 2002)....................................................................................... 27

*Grossman v. Texas Commerce Bancshares, Inc.*, 1995 WL 552744 (S.D.N.Y. Sept. 15,
1995) ............................................................................................................................................ 22

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729 (2d Cir. 1984)......................... 29

*Gulack v. Gulack*, 30 Conn. App. 305, 620 A.2d 181 (1993)...................................................... 30

*Hanson v. Denckla*, 357 U.S. 235 (1958) ..................................................................................... 9

*Harris v. Wells*, 832 F. Supp. 31 (D. Conn. 1993) ....................................................................... 7

*Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360 (S.D.N.Y. 2001) ............................................ 24

*Herrick Co. v. SCS Communications, Inc.*, 251 F.3d 315 (2d Cir. 2001) ...................................... 8

*Hinshon v. King & Spalding*, 467 U.S. 69 (1984) ...................................................................... 18

*Hoskins v. Titan Value Equities Group, Inc.*, 252 Conn. 789, 749 A.2d 1124 (2000) ................ 32

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......................................................... 9

*Jaser v. Fischer*, 65 Conn. App. 349, 783 A.2d 28 (2001) .......................................................... 30

*Johnson v. Chesebrough-Pond's USA Co.*, 918 F. Supp. 543 (D. Conn.), *aff'd mem.*, 104 F.3d 355 (2d Cir. 1996) ............................................................................................................ 28

*Kalnit v. Eichler*, 264  F.3d 131 (2d Cir. 2001) ................................................................. 18, 22

*Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326 (2d Cir. 1972) ............... 10, 13

*Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir. 1994) .............................................. 9

*Levitt v. Bear Stearns & Co.*, 340 F.3d 94 (2d Cir. 2003) ........................................................ 19

*In re Livent Sec. Litig.*, 148 F. Supp. 2d 331 (S.D.N.Y 2001) ...................................................... 24

*Lockery v. O'Hara*, 2002 WL 1837774 (Conn. Super. Ct. July 1, 2002) .................................... 27

*Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 479 A.2d 781 (1984) ............................ 32

*Mariash v. Morrill*, 496 F.2d 1138 (2d Cir. 1974) ...................................................................... 8

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) .................................................... 18

*Milne v. Catuogno Court Reporting Services, Inc.*, 239 F. Supp. 2d 195 (D. Conn. 2002) ........... 8

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir.), *cert. denied,* 531 U.S. 1012 (2000) ...........19, 21, 22, 23

*Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000) .................................. 12

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) .................................................... 12

*Polverari v. Peatt*, 29 Conn. App. 191, 614 A.2d 484 (1992), *cert. denied,* 224 Conn. 913, 617 A.2d 166 (1992) ............................................................................................................ 31

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) ...................................................................... 24

*RMS Titanic, Inc. v. Geller*, 2000 WL 306997 (D. Conn. Jan. 10, 2000) ..................................... 8

*Reisman v. KPMG Peat Marwick LLP*, 965 F. Supp. 165 (D. Mass. 1997) .................................. 8

*Renz v. Schreiber*, 832 F. Supp. 766 (D.N.J. 1993) ...................................................... 20

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997) ........................................................................................ 9, 12

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ............................................... 21, 26

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ................................................ 19, 24

*Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 510 A.2d 972 (1986) ...................... 26, 27

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774 (2d Cir. 1984) ................................................................................... 18

*San Leandro Emer. Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996) ............................................................................. 19, 23, 24

*Sciarrillo v. Ceci*, 1992 WL 156669 (Conn. Super. Ct. June 29, 1992) ................................. 27

*Seeman v. Arthur Andersen & Co.*, 896 F. Supp. 250 (D. Conn. 1995) .................................. 27

*Shenouda v. Mehanna*, 203 F.R.D. 166 (D.N.J. 2001) ................................................. 16, 17

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) .................................... 23

*Silva Run Worldwide Ltd. v. Bear Stearns & Co., Inc.*, 2000 WL 1672324 (S.D.N.Y. Nov. 6, 2000) ...................................................................................... 19

*Sodexho USA, Inc. v. Hotel & Restaurant Employees & Bartenders Union, Local 217 AFL-CIO*, 989 F. Supp. 169 (D. Conn. 1997) ............................................................ 25

*In re Sotheby's Holdings, Inc.*, 2000 WL. 1234601 (S.D.N.Y. Aug. 31, 2000) ......................... 23

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116 (2d Cir. 2003) ............. 19

*In re Stac Electronics Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996) ................................. 25, 26

*Thacker v. Medaphis Corp.*, 1998 WL. 684595 (S.D.N.Y. Sept. 30, 1998) ............................... 23

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) .................................................. 25

*United States Surgical Corp. v. Imagyn Med. Techs., Inc.*, 25 F. Supp. 2d 40 (D. Conn. 1998) ....................................................................................... 7

*United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411 (2d Cir. 2001) .............................. 31

*In re VMS Sec. Litig.*, 752 F. Supp. 1373 (N.D. Ill. 1990) ..................................................... 29, 30

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ................................... 15, 16

*Wendell Corp. Trustee v. Thurston*, 239 Conn. 109, 680 A.2d 1314 (1996) .............................. 30

## STATUTES

U.S. Const. art. VI, cl. 2 ............................................................................................................. 16

15 U.S.C. § 78aa ........................................................................................................................... 8

15 U.S.C. § 78j(b) ................................................................................................................ passim

15 U.S.C. § 78u-4(b) ............................................................................................................ 19, 21

28 U.S.C. § 1331 ........................................................................................................................... 8

28 U.S.C. § 1367 ........................................................................................................................... 8

Conn. Gen. Stat. § 33-929 ........................................................................................................... 8

Conn. Gen. Stat. § 42-110a *et seq* ........................................................................................... 26

Conn. Gen. Stat. § 52-59b(a) ....................................................................................................... 8

## RULES

Fed. R. Civ. P. 4(f) ..................................................................................................................... 14

Fed. R. Civ. P. 4(h)(2) ............................................................................................................... 14

Fed. R. Civ. P. 9(b) ............................................................................................................. passim

Fed. R. Civ. P. 12(b)(2) ............................................................................................................ 1, 7

Fed. R. Civ. P. 12(b)(5) .......................................................................................................... 1, 14

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 17, 18

SEC Rule 10b-5 ................................................................................................................... passim

## OTHER AUTHORITY

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 740 ...................... 19

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in
Civil and Commercial Matters, U.S.C.S. International Agreements at 265 ..............14, 15, 16, 17

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IM PARTNERS and its General Partner | : | CIVIL ACTION NO. |
| DANIEL E. MARINO, | : | 3:04-CV-1651 (JCH) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DEBIT DIRECT LIMITED, JACK O'HALLORAN, | : | |
| DAVID BUTTERWORTH, MICHAEL KELLY, | : | |
| SKANCO BUSINESS SYSTEMS LIMITED, | : | |
| BARRY KENNEDY, RESTART LIMITED, IAN | : | |
| LLOYD, ANDREW KERMODE, DOMICILIUM | : | |
| (IOM) LIMITED, JOHN ALLEN, and PATRICK | : | |
| WALSH | : | |
| | : | |
| Defendants. | : | FEBRUARY 7, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEBIT DIRECT DEFENDANTS' MOTION TO DISMISS**

Pursuant to Rules 12(b)(2), 12(b)(5), 12(b)(6) and 9(b) of the Federal Rules of Civil

Procedure, defendants Debit Direct Limited, David Butterworth, Michael Kelly, Skanco

Business Systems Limited, Barry Kennedy, Restart Limited, Ian Lloyd and Andrew Kermode

(collectively, the "Debit Direct Defendants"), by their undersigned counsel, submit this

memorandum of law in support of their motion to dismiss the Complaint filed October 1, 2004

(the "Complaint" or "Compl.").

**Preliminary Statement**

Plaintiff purports to bring this action to recover funds from Debit Direct Limited, an Isle

of Man corporation which has its offices in the Isle of Man in the British Isles. Debit Direct

Limited is a start-up company developing a means of providing secure, internet based, money

transfers for a variety of applications. Plaintiff seeks to recover from the defendants amounts

contributed by plaintiff as start-up funding to Debit Direct alleging a laundry list of legal

theories.  Plaintiff attempts to base its claims on a contract allegedly arising from a November 17, 2003 memorandum that, on its face,  explicitly denies that it creates a contract.  Plaintiff filed this action in the midst of a discussion of how funds it provided to Debit Direct would be treated and on the future management of this start-up enterprise.  Plaintiff's withdrawal of support and the filing of this litigation has jeopardized the viability of Debit Direct as a going concern.  With respect to the Debit Direct defendants, this is not a case of fraud and no amount of obfuscation in plaintiff's Complaint can turn this into an action for fraud.

For a variety of compelling reasons, this Court should dismiss the Complaint.  First, the Court must dismiss this action as to all of the Debit Direct Defendants for lack of personal jurisdiction.  None of the individuals is alleged to have transacted business in the United States or otherwise engaged in conduct that would render them subject to jurisdiction.  Similarly, neither Debit Direct, Skanco or Restart has transacted business in the United States or otherwise engaged in conduct that would render them subject to jurisdiction.  Moreover, principles of due process prohibit the exercise of jurisdiction over the Debit Direct Defendants. See Point I.

Second, the Complaint must be dismissed because the Debit Direct Defendants have not been properly served.  The United Kingdom and the territories listed in the Annex to the United Kingdom's declaration are parties to the Hague Convention on service of process and, as such, the plaintiff is obliged to use a form of service permitted under that convention.  Here, plaintiff has elected to attempt service by a means specifically prohibited in the Isle of Man pursuant to the convention. See Point II.

Third, plaintiff's sole basis for federal jurisdiction is a speculative and conclusory claim for violation of the federal securities laws, specifically Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.  That claim fails as a matter of law for failure to

plead fraud with particularity as required by Rule 9(b) and for failure to plead the specific factual basis for scienter required by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  See Point III.

Further, without a federal claim, and prior to any substantial progress in this litigation, this Court should decline to exercise its supplemental jurisdiction over the remaining state law claims. See Point IV.

Finally, should the Court decide to address the state law claims, those claims should be dismissed for failure to state a claim for a variety of reasons. See Point V.

## BACKGROUND FACTS

Plaintiff's Complaint attempts to spin conclusory allegations and unsubstantiated charges into a complex tale of fraud and deceit by the Debit Direct defendants.  Plaintiffs' allegations cannot withstand even elementary scrutiny.  Stripped of its wild accusations and baseless claims, the relatively few true "facts" the Complaint contains are set forth below.

**The Debit Direct Defendants**

The defendants in this action are numerous and wide-ranging.  The Debit Direct Defendants include corporate defendants Debit Direct Limited ("Debit Direct"), Skanco Business Systems Limited ("Skanco"), and Restart Limited ("Restart").  Debit Direct is an Isle of Man corporation with its offices in the Isle of Man. (Compl. ¶ 5).  Skanco is an Isle of Man Company with its offices in the Isle of Man. (Compl. ¶ 7).  Skanco is the Isle of Man's leading business technology services provider and has contracted with Debit Direct to provide information technology services and office space. (Compl. ¶ 61B)  Restart is an Isle of Man corporation with its offices in the Isle of Man. (Compl. ¶ 9).  Restart is a disaster recovery

hosting company that has contracted with Debit Direct to provide data hosting services.  (Compl. ¶ 61B).

The individual defendants presenting this motion, all residents of the Isle of Man, include: David Butterworth, a director of Debit Direct and Skanco; Michael Kelly, an employee of Debit Direct; Barry Kennedy, a director of Debit Direct and Skanco; Ian Lloyd, an employee of Skanco; and Andrew Kermode, also an employee of Skanco. (Compl. ¶¶ 17, 19, 22-24, 26, 27-30).

**Plaintiff's Meetings with O'Halloran**

On or about October 9, 2003, the general partner of plaintiff, IM Partners, Dan Marino, allegedly met with defendant Jack O'Halloran on the Isle of Man and discussed Debit Direct. (Compl. ¶ 44).  O'Halloran and Marino then allegedly discussed Debit Direct on other occasions. (Id.).  On or about October 27, 2003, O'Halloran allegedly visited Marino in Stamford, Connecticut and again discussed Debit Direct. (Compl. ¶ 45).  Plaintiff alleges, without any supporting details, that defendants Butterworth and Kelly, on unspecified dates and unspecified locations, contacted unnamed partners of the plaintiff and allegedly made unspecified representations concerning Debit Direct. (Compl. ¶ 46).  Plaintiff then alleges the execution of the "November 17, 2003 Memorandum" attached to the Complaint as Exhibit 1. (Compl. ¶ 47). Defendants Butterworth and Kelly are not alleged to have had any contact with IM Partners prior to November 17.

**The November 17, 2003 Memorandum**

The Complaint alleges that O'Halloran signed the November 17, 2003 Memorandum "on behalf of " Debit Direct, Butterworth and Kelly, but that allegation is contradicted by the document itself which states that O'Halloran signed "on behalf of himself and Debit Direct."

-4-

(Compl. Ex. 1). The most notable feature of the November 17, 2003 Memorandum is that, at most, it is an understanding that the signatories to that document would continue to work toward a formal contract concerning a potential investment in and funding of Debit Direct. The November 17, 2003 Memorandum explicitly states immediately above the signature lines:

> It is understood that this Memorandum of Understanding sets forth <u>an agreement in principle only and is not binding on the parties hereto and may not be relied upon as the basis of a contract by estoppel</u>. It is further understood that <u>no party shall be bound</u> until documentation finalizing the foregoing has been prepared and executed.

(Compl. Ex. 1, emphasis added).

### Wires by IM Partners

Plaintiff allegedly made three wire transfers: $500,000 to Debit Direct on or about November 28, 2003; $500,000 to Jack O'Halloran on or about December 3, 2003; and, $1,000,000 to Debit Direct on or about March 16, 2004. (Compl. ¶¶ 48, 51). Again, plaintiff alleges that Butterworth and Kelly made unspecified representations at unspecified times, dates and locations to unnamed partners of plaintiff that $2,000,000 "would be sufficient to assure the success of the proposed business of Debit Direct" (Compl. ¶ 49). This allegation fails to account for the allegations that Debit Direct was wired $1,500,000, and O'Halloran was personally wired $500,000.

Although Plaintiff alleges that it purchased "common stock," plaintiff fails to plead what securities it was issued and by whom – because it cannot identify any such securities. The November 17, 2003 Memorandum apparently contemplates the creation of a joint venture (that never occurred) and a transfer of 45% of the ownership of Debit Direct from O'Halloran to IM Partners leaving O'Halloran with 45% ownership remaining. (Compl. Ex. 1). That transaction could be viewed as contemplating a sale of half of O'Halloran's Debit Direct stock in exchange

for $500,000 from IM Partners and an infusion of $1,500,000 in the form of a loan (or some other funding) to Debit Direct. (Compl. Ex. 1). In any event, the memorandum, by it own terms, is not a contract for either purchase or a sale of securities, a loan or any other type of funding.

**Alleged Omissions**

Plaintiff alleges that defendants failed to disclose certain facts prior to plaintiff's "purchase." These alleged omissions are: 1) that O'Halloran was subject to a court ordered ban from serving as a director of an Irish Company (Compl. ¶ 55); 2) that the $2,000,000 wired to O'Halloran and Debit Direct would not be sufficient to complete the development of Debit Direct's business (Compl. ¶ 61A); 3) that Debit Direct would enter into contracts with Skanco, Restart and Domicilium (Compl. ¶ 61B); 4) that Butterworth allegedly owned an interest in Skanco (Compl. ¶ 61C); and 5) that Debit Direct's contract with Skanco could result in the repossession of the computer equipment provided by Skanco (Compl. ¶ 61D). There is no detailed indication in the Complaint which of the defendants knew any of these purportedly omitted facts nor when they supposedly knew them.

**Conduct After Plaintiff's Wires**

On or about April 20, 2004, <u>after</u> the last of plaintiff's wires, O'Halloran, Butterworth, Kelly and Walsh visited plaintiff in Stamford, Connecticut. Plaintiff alleges, without attribution to a particular defendant, that defendants requested additional funding for Debit Direct, purportedly stating, again without attribution, that the prior funding should have been stated in British pounds rather than U.S. dollars. (Compl. ¶ 67). At that same meeting, O'Halloran allegedly threatened plaintiff Marino by reference to O'Halloran's alleged relationship to the "mafia". (Compl. ¶ 68).

On or about June 8, 2004, plaintiff determined not to provide any additional funding to Debit Direct and made notification of that decision by means of an e-mail from plaintiff's counsel. (Compl. ¶75 and Ex. 2).  In that e-mail, plaintiff also sought to rescind its $2,000,000 "investment," again despite the fact that only $1,500,000 was allegedly wired to Debit Direct. (Id.).  Defendant Butterworth then allegedly informed plaintiff that if no additional funding was forthcoming, Skanco would be able to repossess the computers provided to Debit Direct under the terms of its contract. (Complaint ¶ 76).

## ARGUMENT

### I.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEBIT DIRECT DEFENDANTS

#### A.   Defendants Have Insufficient Contacts With The United States To Permit The Exercise Of Personal Jurisdiction

When personal jurisdiction is challenged through a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff has the burden of showing that the Court has jurisdiction over the defendant. See DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001) ( "'When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.'") (quoting Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  In ruling on a motion to dismiss, a court must construe the pleadings in favor of the plaintiff. United States Surgical Corp. v. Imagyn Med. Techs., Inc., 25 F. Supp.2d 40, 44 (D. Conn. 1998)).  Vague and conclusory allegations, however, "are not enough to establish personal jurisdiction." Harris v. Wells, 832 F. Supp. 31, 34 (D. Conn. 1993) (finding no personal jurisdiction) (citing Shaw v. American Cyanamid Co., 534 F. Supp. 527, 528 (D. Conn. 1982) (same)).

Plaintiff purports to invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331 (Compl. ¶ 1) through a single count of violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (Compl. ¶¶ 84-97, "First Cause of Action") and this Court's supplemental jurisdiction under 28 U.S.C. § 1367 for the all of the remaining state statutory and common law claims.[1]

The federal securities laws provide for nationwide service of process. See 15 U.S.C. § 78aa. In a case alleging violation of the federal securities laws, under the nationwide service of process provision, process "may be served in any [ ] district of which the defendant is an inhabitant or . . . may be found." 15 U.S.C. § 78aa. The courts have construed section 78aa to confer personal jurisdiction over a defendant without regard to the forum state's long-arm statutes, so long as the defendant has sufficient minimum contacts with the United States. See, e.g., Mariash v. Morrill, 496 F.2d 1138, 1140-41 (2d Cir. 1974) (discussing nationwide service of process in the context of an action under the Securities Exchange Act of 1934); RMS Titanic, Inc. v. Geller, 2000 WL 306997, at *2 (D. Conn. Jan. 10, 2000) ("when Congress provides nationwide service of process in connection with a federal cause of action it also grants to district courts nationwide in personam jurisdiction . . .") (quoting Daniel v. Am. Bd. of Emergency Med., 988 F. Supp. 127, 199-200 (W.D.N.Y. 1997)).[2]

---

[1]     Plaintiff has not pled any other basis for jurisdiction and on the face of the Complaint diversity jurisdiction cannot be found as plaintiff is a partnership and for purposes of jurisdiction, the citizenship of a partnership is determined by reference to the citizenship of all of its partners. Herrick Co. v. SCS Communications, Inc., 251 F.3d 315, 322 (2d Cir. 2001) (citing Carden v. Arkoma Assoc., 494 U.S. 185, 192-95 (1990). As plaintiff has not pled the citizenship of its partners, no diversity jurisdiction may be found. See e.g. Reisman v. KPMG Peat Marwick LLP, 965 F. Supp. 165, 176 (D. Mass. 1997).

[2]     Because plaintiff has asserted a trumped up federal securities law claim that, as discussed below, must fail, see Point III infra., the analysis of this Court's jurisdiction is made assuming, arguendo, that the securities claim can withstand the motion to dismiss. When the Court finds that the federal securities law claim fails, the remaining state law claims

In federal securities actions, personal jurisdiction extends to the limits of the due process clause of the Fifth Amendment.  There are two primary factors to consider in evaluating personal jurisdiction under a due process clause: (1) whether the defendant has sufficient minimum contacts with the United States and (2) whether the exercise of jurisdiction over the defendant would "offend traditional notions of fair play and substantial justice." Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 942 (4th Cir. 1994) (considering due process under the Fourteenth Amendment, citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  In that context, the Fifth Amendment only requires that a defendant have sufficient aggregate minimum contacts with the United States as a whole. See, e.g., Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 946-47 (11th Cir. 1997) (analyzing nationwide service provision for RICO claim).  Further, "courts must ensure that requiring a defendant to litigate in plaintiff's chosen forum is not unconstitutionally burdensome." Id. at 947.  Although there is no mechanical formula by which to measure the sufficiency of a defendant's contacts, "it is essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  For example, in FDIC v.

---

are subject to a much more stringent jurisdictional challenge.  Jurisdiction over foreign defendants for the state law claims would be decided pursuant to Connecticut's long arm statutes. Conn. Gen. Stat. § 52-59b(a) (for individuals) and Conn. Gen. Stat. § 33-929 (for corporations).  Here, personal jurisdiction would not be established as to any of these defendants.  "'[P]ersonal jurisdiction may not be asserted over [an officer] of a corporation based on [his] transaction of business in Connecticut where the [officer] did not transact any business other than through the corporation . . ..'" Milne v. Catuogno Court Reporting Services, Inc., 239 F. Supp. 2d 195, 203 (D. Conn. 2002) (quoting Adams v. Wex, 56 F. Supp. 2d 227, 230 (D. Conn. 1999)).  Similarly, jurisdiction cannot be established over the foreign corporate defendants as Skanco and Restart have not performed any act in this state and jurisdiction over Debit Direct cannot satisfy the more stringent constitutional due process requirements applicable where nationwide service is not available.

Milken, 781 F. Supp. 226, 232 (S.D.N.Y. 1991), the court found that a Bermuda corporation did not have sufficient contacts for purposes of a federal securities law claim despite its employees' attendance at board meetings in the jurisdiction and correspondence emanating from the jurisdiction.

Finally, the mere incantation of a "conspiracy" among defendants (See, e.g., Compl. ¶¶ 80-81) does not create an exception to the minimum contacts requirements. "To be sure, the rule in this circuit is that the mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator." Leasco Data Processing Equip. Corp.v. Maxwell, 468 F.2d 1326, 1343 (2d Cir. 1972).

Here, plaintiff has utterly failed to meet its burden of establishing personal jurisdiction over the Debit Direct Defendants. First, the Complaint recites that defendants Skanco and Restart are Isle of Man corporations with their principal places of business on the Isle of Man. (Compl. ¶¶ 7, 9). There is no allegation that Skanco or Restart have any operations or transact any business in the United States. The Complaint is devoid of any allegations asserting these defendants' contacts with this forum, much less any conduct on these defendants part by which they have "purposefully availed [themselves] of the privilege of conducting activities within the forum state". Aside from plaintiff's unsupported conclusory allegation that Skanco and Restart are members of a conspiracy, there is no allegation whatsoever on which to base personal jurisdiction over Skanco and Restart.

Second, individual defendants Kennedy, Lloyd and Kermode are Isle of Man residents. (Compl. ¶¶ 24, 27, 29). As far as can be discerned from the Complaint, there is no allegation whatsoever that defendants Kennedy, Lloyd and Kermode have had any contact with the United States. Personal jurisdiction cannot be asserted over individuals solely by virtue of their

employment. See Calder v. Jones, 465 U.S. 783, 790 (1984) (personal jurisdiction over an employee is not conferred simply by the corporation's contacts with a forum).  Again, aside from an unsupported conclusory allegation of conspiracy, there is no allegation whatsoever on which to base personal jurisdiction over Kennedy, Lloyd and Kermode.

Third, individual defendants Butterworth and Kelly are also Isle of Man residents (Compl. ¶¶ 17, 22).  The Complaint alleges only two contacts of defendants Butterworth and Kelly with the United States: (i) unspecified representations at unspecified times and locations to unnamed partners of plaintiff (Compl. ¶ 49), and (ii) after the alleged transaction, Butterworth and Kelly attended a meeting in Stamford at which someone allegedly requested additional funding for Debit Direct. (Compl. ¶ 67).  Such minimal contact with the forum cannot support the exercise of jurisdiction.

Finally, Debit Direct is an Isle of Man corporation with its principal place of business on the Isle of Man. (Compl. ¶ 5).  There is no allegation that Debit Direct does any business in the United States.  The only alleged contact of Debit Direct with the United States is the allegation of representations made by O'Halloran, Butterworth and Kelly purported made on behalf of Debit Direct, in connection with an inchoate investment in Debit Direct.  That contact never resulted in a completed contract as the November 17 Memorandum itself recites, much less any purposeful availment of the laws of the jurisdiction.  Thus, plaintiff has not alleged sufficient contact by Debit Direct to justify the exercise of personal jurisdiction.

**B.    The Exercise Of Personal Jurisdiction Over The Debit Direct Defendants Would Violate Constitutional Principles Of Due Process.**

Plaintiff cannot establish that the exercise of personal jurisdiction over the Debit Direct Defendants comports with constitutional principles of due process.  Personal jurisdiction found through minimum contacts under nationwide service provisions must comport with notions of

"fair play and substantial justice" under the Fifth Amendment.  "Once minimum contacts have

been established [in a nationwide service of process case], we assess whether the exercise of

personal jurisdiction is consistent with 'traditional notions of fair play and substantial justice.' "

Pinker v. Roche Holdings Ltd., 292 F.3d 361, 370 (3d Cir. 2002) (citation omitted); see also

Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1210 (10th Cir. 2000) (stating that in

nationwide service of process cases, the exercise of jurisdiction over defendants must comport

with due process); Rep. of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942

(11th Cir. 1997) ("we first determine whether the applicable statute potentially confers

jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports

with due process"); D'Addario v. Geller, 264 F. Supp. 2d 367, 387 (E.D. Va. 2003) ("Because

defendants...have been validly served pursuant to RICO's nationwide service provision, *in

personam* jurisdiction over them is established, provided that it comports with due process

considerations.").  The overriding concern is that "jurisdictional rules are not exploited in such a

way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a

'severe disadvantage' in comparison to his opponent." Christian Science Bd. of Directors of First

Church of Christ, Scientist v. Nolan, 259 F.3d 209, 217 (4th Cir. 2001).

A court may exercise jurisdiction over a foreign corporation upon a finding that "the

foreign defendants ... have engaged in continuous and systematic activities in the forum," or that

the defendant has "purposefully directed [its] activities at residents of the forum and the litigation

results from alleged injuries that arise out of or relate to those activities." Milken, 781 F. Supp. at

229 (internal quotations omitted).  Plaintiff can show "purposeful direction of activities" by

demonstrating that the defendant: 1) does business in the forum; 2) does an act in the forum; or

3) causes effects in the forum by an act performed elsewhere, provided that the effect is a "direct

and foreseeable result of the conduct outside the territory." <u>Bersch v. Drexel Firestone, Inc.</u>, 519

F.2d 974, 998-1000 (2d Cir.), <u>cert.</u> <u>denied</u>, 423 U.S. 1018 (1975); <u>see also</u> <u>Milken</u>, 781 F. Supp.

at 231.  With respect to application of the third basis, courts must apply caution in finding

jurisdiction in an international context. <u>Leasco</u>, 468 F.2d at 1341.  For example, "correspondence

and attendance at board meetings are not alone sufficient to establish the "doing business" or

"doing an act" basis for jurisdiction over the person." <u>Milken</u>, 781 F. Supp. at 232.

Applying those principles to this case, personal jurisdiction cannot be found where the

only allegations against the individual defendants Butterworth and Kelly relate to alleged

conduct in their capacity as officers or directors of Debit Direct, a corporation that does not even

transact business in Connecticut.  The contact of Debit Direct is solely that of O'Halloran,

Butterworth and Kelly and for the same reasons that their limited communications and the

incomplete transaction referred to in the November 17 Memorandum fails to provide minimum

contact concerning those defendants, they similarly fail to supply minimum contacts for Debit

Direct.  Further, defendants Kennedy, Kermode, Lloyd, Skanco and Restart are not alleged to

have performed any act related to the claims set forth in the Complaint in the United States or

even to have had any other contact with the United States.  Because plaintiff cannot show that

the Debit Direct Defendants have sufficient contacts with the United States, there is no basis to

conclude that any of them should have expected or anticipated the possibility of defending

litigation in a United States court.  Forcing Isle of Man residents, most of whom are not even

alleged to have ever visited the United States for any reason, to litigate in Connecticut, places

them at a "severe disadvantage" to their opponent.  Accordingly, fair play and substantial justice

dictate that the exercise of jurisdiction over the Debit Direct Defendants would not comport with

principles of due process.

**II.   THE COMPLAINT MUST BE DISMISSED AS TO EACH OF THE ISLE OF MAN DEFENDANTS BECAUSE PLAINTIFF FAILED TO MAKE PROPER SERVICE OF PROCESS**

Plaintiff's attempted service on Messrs. Kelly, Lloyd and Kermode as well as Debit Direct, Skanco and Restart (collectively, the "Isle of Man Defendants") is defective on the ground that it fails to comply with the requirements of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters dated November 15, 1965. U.S.C.S. International Agreements at 265 (the "Hague Convention" or "Hague Conv.").[3]  The returns of service for these defendants recite that Kelly, Lloyd and Kermode were served by a "Coroner" on October 19, 2004 and that Debit Direct, Skanco and Restart were served on the same date by the Coroner by service on defendant Kelly. (See Exhibit A, Docket No. 8).  Since plaintiff's attempted method of service fails to comply with the Hague Convention, the Complaint must be dismissed against these defendants pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficiency of service of process.

Service of process in federal actions is governed by Federal Rule of Civil Procedure 4. Service on individuals in a foreign country is governed by Rule 4(f), that provides, in relevant part:

> **(f)** Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States:
>
> > **(1)** by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents . . .

Likewise, service on foreign corporations must be made pursuant to the Hague Convention. Fed. R. Civ. P. 4(h)(2).

---

[3]   Defendants do not contest that Messrs. Butterworth and Kennedy were properly served.

The Isle of Man is a party to the Hague Convention.  The Hague Convention contemplates a procedure by which service is accomplished by presenting documents to be served and a request that the materials be served to a Central Authority. Hague Conv. art. 3.  It is then the responsibility of the Central Authority to serve the materials. Id. art. 5.  The Central Authority then provides a return of service in a specified form. Id. art. 6 and 7.  The designated Central Authority for the Isle of Man is "The First Deemster and Clerk of the Rolls, Rolls Office, Douglas, Isle of Man." Hague Conv., Declaration of the United Kingdom, Annex.

The Hague Convention does contemplate, in Article 10, other means of accomplishing service of process, including either directly between judicial officers of each country or by a party directly contacting judicial officers in the country where service is to be accomplished.

> Article 10.  <u>Provided the State of destination does not object</u>, the present Convention shall not interfere with-
>      . . .
>      b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>      c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Conv. 10(b) and (c) (emphasis added).  However, the United Kingdom, on behalf of the Isle of Man, has objected to the use of any means other than the service of process through the means provided in Article 10(b) and (c):

> With reference to the provisions of paragraphs (b) and (c) of Article 10 of the Convention, documents sent for service through official channels will be accepted in a territory listed in the Annex <u>by the designated authority and only from judicial, consular or diplomatic officers of other Contracting States</u>.

Hague Conv., Declaration of the United Kingdom, ¶ (2)(d) (emphasis added).

The Supreme Court has held that compliance with the Hague Convention is mandatory when serving a foreign defendant in a signatory country. See <u>Volkswagenwerk</u>

*Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) ("This [Hague Convention] language is mandatory...."). In all cases in which the Hague Convention applies, the Supremacy Clause preempts inconsistent methods of service. U.S. Const. art. VI, cl. 2. Accordingly, where a destination territory (such as the Isle of Man) is a party to the Hague Convention, the convention's procedures are the exclusive means by which service of process may be effected in that country. Failure to comply with the convention voids the attempted service. Id.; see also Eli Lilly and Co. v. Roussel Corp., 23 F. Supp. 2d 460, 470 (D.N.J. 1998).

In Volkswagenwerk, the Supreme Court focused upon the unambiguous, mandatory language found in Article I to the Hague Service Convention. See Volkswagenwerk, 486 U.S. at 699. Article 1 states: "The present Convention *shall* apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." See Hague Conv., art. 1 (emphasis added). In so doing, the Court contrasted the mandatory language in the Hague Service Convention with the nonmandatory language found in the Hague Evidence Convention. Id.

Although the Hague Service Convention offers signatories additional methods of service as an alternative to the Central Authority, such alternatives are only available upon the consent of the nation where service is to be made. The most relevant alternative, the Article 10(c) provision that service can be made by a party directly contacting local authorities to accomplish service, has been explicitly rejected by the United Kingdom on behalf of the Isle of Man. See Hague Conv. art. 18; Declaration of the United Kingdom, ¶ (2)(d). In Shenouda v. Mehanna, 203 F.R.D. 166, 168-69 (D.N.J. 2001) the court considered an attempt to serve an Egyptian national in Egypt when the plaintiff transmitted the Complaint to a local attorney in Egypt who then prepared an affidavit of service, presented it to a local Egyptian court and then a local process

-16-

server made service.  Egypt is a signatory to the Hague Convention and (like the United

Kingdom) has explicitly rejected Article 10(c)'s procedure permitting direct contact with local

authorities to accomplish service. Id. at 171.  The Shenouda court found that, given Egypt's

explicit rejection of the means used by the plaintiff and the plaintiff's failure to otherwise

comply with the Hague Convention, the attempted service was improper and dismissed the

plaintiff's Complaint. Id. at 171-72.

Here, the plaintiff has attempted to make service by means of service by a Coroner who

tersely filled out the form on the back of a district court summons.  There is no indication that a

Hague Convention request was made to The First Deemster and Clerk of the Rolls of the Isle of

Man or that a certificate in the form required by the convention has been executed.  Since the

United Kingdom has explicitly rejected the method of service used by plaintiff, and since there is

no evidence that service has been accomplished on defendants Debit Direct, Skanco, Restart,

Kelly, Lloyd and Kermode by a method which is approved by the Hague Convention, the

Complaint must be dismissed as to each of these defendants.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff's sole federal law claim is an alleged violation of Section 10(b) of the Securities

Exchange Act of 1934. ("Section 10(b)")  The Complaint utterly fails to comply with the

requirement of the Federal Rules of Civil Procedure that allegations of fraud be pled with

particularity and the PSLRA's requirement that state of mind also be pled with particularity.

Given the conclusory and fact bare nature of the Complaint, despite its bulk, plaintiff's Section

10(b) claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

A.      **Rule 12(b)(6) Standards**

The purpose of a motion to dismiss under Rule 12(b)(6) "is . . . to assess the legal feasibility of the complaint." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (quotation and citation omitted).  In deciding a motion to dismiss, the Court must accept all well pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff.  Gagliardi v. Village of Pawling, 18 F.3d 188, 191 (2d Cir. 1994).  The Court need not, however, assume the truth of legal conclusions or unsupported factual inferences.  De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir.), cert. denied, 519 U.S. 1007 (1996).   Dismissal is warranted if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  Hinshon v. King & Spalding, 467 U.S. 69, 73 (1984).  That is the case here.

B.      **The Complaint Fails to Allege With The Requisite Particularity That Defendants Made False And Misleading Statements Of Fact**

To state a cause of action under Section 10(b), a plaintiff must plead that, in connection with the purchase or sale of a security, the defendant made a materially false statement of fact or omitted a material fact, with scienter, causing damage to the plaintiff.  See Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001); Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000).

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).  In this Circuit, Rule 9(b) requires that a complaint specify, with particularized factual allegations, the statements plaintiff contends were fraudulent, identify the speaker, state where and when the statements were made and explain why the statements were fraudulent.  See Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999), cert. denied, 528 U.S. 188 (2000); Mills v.

-18-

Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).  Plaintiffs "do not . . . enjoy a 'license to base claims of fraud on speculation and conclusory allegations.'"  San Leandro Emer. Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 813 (2d Cir. 1996) (citation omitted).  Instead, "[p]laintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997).  These requirements are "designed to provide a defendant with fair notice of a plaintiff's claim in order to enable defendant to prepare a defense, protect defendant's reputation or goodwill from harm, and reduce the number of strike suits."  Eickhorst v. American Completion & Dev. Corp., 706 F. Supp. 1087, 1091 (S.D.N.Y. 1989).

Similarly, Congress enacted the PSLRA to "establish uniform and more stringent pleading requirements to curtail the filing of meritless lawsuits."  H.R. Conf. Rep. No. 104-369, at 41 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 740.  As such, the PSLRA sets forth heightened requirements for pleading falsity and scienter.  See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116, 122 & n.4 (2d Cir. 2003); Levitt v. Bear Stearns & Co., 340 F.3d 94, 104 (2d Cir. 2003); Silva Run Worldwide Ltd. v. Bear Stearns & Co., Inc., 2000 WL 1672324, at *3 (S.D.N.Y. Nov. 6, 2000).  Accordingly, under the PSLRA, to survive a motion to dismiss, a plaintiff must set forth each statement alleged to have been misleading, the reason or reasons why the statement is misleading and, if an allegation regarding the statement or omission is made on information and belief, the complaint must state with particularity all facts on which that belief is formed.  See 15 U.S.C. § 78u-4(b)(1); Rothman v. Gregor, 220 F.3d 81, 89 (2d Cir. 2000); Novak v. Kasaks, 216 F.3d 300, 306-07 (2d Cir.), cert. denied, 531 U.S. 1012 (2000). Further, absent a specific statutory or regulatory duty, insider trading, or a fiduciary duty,

a corporation and its officers have no affirmative duty of disclosure. See In re General Motors Class E Stock Buyout Sec. Litig., 694 F. Supp. 1119, 1129 (D. Del. 1988).

Finally, statements made subsequent to an alleged securities transaction cannot form the basis for an allegation of fraud. "plaintiffs cannot rely on statements made subsequent to their purchases in order to state a securities fraud claim, because plaintiffs could not have relied on the statements in making their purchases in the first place." Renz v. Schreiber, 832 F. Supp. 766, 771 (D.N.J. 1993) (granting motion to dismiss) (citation and quotation omitted).

The present Complaint fails to provide the specificity required by Rule 9(b).  Plaintiff conclusorily alleges that defendants: 1) made unspecified representations about the prospects of Debit Direct (Compl. ¶ 44); 2) made further unspecified representations about Debit Direct (Compl. ¶ 46); and, 3) made unspecified representations about the required level of funding for Debit Direct (Compl. ¶ 49).  Plaintiff also alleges omissions of: 1) defendant O'Halloran's ban from serving as a director of an Irish company (Compl. ¶ 55); 2) the eventual funding requirements of Debit Direct (Compl. ¶ 61A); 3) the contracts that Debit Direct would enter into with, inter alia, Skanco and Restart to commence operations (Compl. ¶ 61B); 4) that defendant Butterworth owned an interest in Skanco and Restart (Compl ¶ 61C); and, 5) that Debit Direct's contracts would permit vendors to repossess equipment should Debit Direct fails to keep up with its payments (Compl. ¶ 61D).

None of the allegations of misstatement is accompanied by the factual details of what the specific challenged statements were, where and when the challenged statements were made or who made the specific statement.  The Complaint also fails to explain why the unspecified statements were fraudulent.  The alleged omissions are similarly devoid of particularity.  Even assuming all of the allegations, there is no factual basis why any of the alleged omissions were

misleading in any way.  Conclusory allegations of speculative theories pled on "information and belief" such as these cannot support an allegation of fraud and must be dismissed. See Rombach v. Chang, 355 F.3d 164, 172 (2d Cir. 2004) (affirming dismissal of § 10(b) claim pursuant to Rule 9(b) where "nothing in the complaint explains with adequate specificity how [the allegedly false] statements were actually false or misleading"); Frazier v. VitalWorks, 341 F. Supp. 2d 142, 151 (D. Conn. 2004) (dismissing § 10(b) claim for failure to comply with Rule 9(b), reasoning, inter alia, that "Completely unattributed statements do not meet the standards of Rule 9(b).").

### C.   The Complaint Fails To Allege With Particularity That The Debit Direct Defendants Acted With The Requisite Scienter

The PSLRA created stringent pleading requirements applicable to claims under Section 10(b), including a rigorous standard for pleading the required state of mind.  See 15 U.S.C. § 78u-4(b).  Thus, it is no longer sufficient for a plaintiff alleging a securities fraud claim to allege a defendant's state of mind in general or conclusory terms.  Rather, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to each act or omission. See 15 U.S.C. § 78u-4(b)(2).  A plaintiff bringing an action under Section 10(b) must allege, with particularity, "facts that give rise to a strong inference of fraudulent intent." Novak, 216 F.3d at 307, 310; Faulkner v. Verizon Communications, Inc., 156 F. Supp. 2d 384, 392-93 (S.D.N.Y. 2001) (citation omitted).  Even when a pleading is permitted upon information and belief, under the exception for facts that are peculiarly within the opposing party's knowledge, the complaint still "must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." Id.

In this Circuit, a "strong inference" of fraudulent intent can be raised only by alleging, with particularity, (1) a motive and opportunity to commit fraud or (2) facts that constitute

"strong circumstantial evidence of conscious misbehavior or recklessness." Novak, 216 F.3d at 307 (internal citations omitted); see also Kalnit, 264 F.3d at 138. Plaintiff has done neither.

### 1. The Complaint Does Not Adequately Allege Motive And Opportunity To Commit Fraud

To plead scienter by alleging motive, a plaintiff must allege "a concrete and personal benefit to the individual defendants resulting from the fraud." Kalnit, 264 F.3d at 139. Allegations of such a motive must be specific, and "[m]otives that are generally possessed by most corporate directors and officers do not suffice." Id. Thus, for example, it is insufficient to allege merely that a defendant wished to make the corporation "appear profitable" or to "keep stock prices high to increase officer compensation." Id.; Glickman v. Alexander & Alexander Servs., Inc., 1996 WL 88570, at *6-7 (S.D.N.Y. Feb. 29, 1996) (alleged motive to "raise much needed capital" for the company and to protect an individual defendant's financial interests were too generalized and commonplace to support inference of scienter); Ferber v. Travelers Corp., 785 F. Supp. 1101, 1107 (D. Conn. 1991) ("[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated. On a practical level, were the opposite true, the executives of virtually every corporation in the United States could be subject to fraud allegations"); Grossman v. Texas Commerce Bancshares, Inc., 1995 WL 552744, at *11 (S.D.N.Y. Sept. 15, 1995) ("Every company's executives likely wish to report positive financial health so that the company can reap the varied benefits that flow from an image of financial stability").

The only allegations in the Complaint concerning the Defendants' motives to make materially false and misleading statements about Debit Direct are the plaintiff's bald speculation that defendants allegedly planned to strip Debit Direct of any funding provided by plaintiff by contracts that would benefit other companies owned by the defendants. This theory is the purest

-22-

speculation unsupported by reference to **any** facts, much less the detailed pleading required to establish scienter by motive and opportunity.  Further, the Complaint undermines its own theory by acknowledging that Debit Direct received valuable services, office space and equipment for each of the contracts that supposedly stripped Debit Direct of assets. (Compl. ¶ 61B).  These allegations fail to plead scienter with the particularity required by the PSLRA.

> ### 2.  The Complaint Does Not Adequately Allege Facts Constituting Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness

The Complaint also fails to meet the alternative, but more stringent, scienter pleading requirement of alleging facts constituting "strong circumstantial evidence of conscious misbehavior or recklessness."  Novak, 216 F.3d at 308.  To satisfy the standard for pleading conscious misbehavior, plaintiff must allege, with particularity, that defendants engaged in "deliberate illegal conduct."  In re Sotheby's Holdings, Inc., 2000 WL 1234601, at *6 (S.D.N.Y. Aug. 31, 2000).  Pleading scienter may not rest on a bare inference that a defendant must have had knowledge of certain material non-public information.  See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994).  In that regard, plaintiff is required to "link the misleading statement with facts that give rise to an inference that the speaker had a basis for knowing it was false."  Thacker v. Medaphis Corp., 1998 WL 684595, at *3 (S.D.N.Y. Sept. 30, 1998); San Leandro, 75 F.3d at 813 (allegations dismissed due in part to failure to plead that defendants knew the statements were false when made).  To plead recklessness, a plaintiff must allege particular facts showing conduct that is "'at the least . . . "highly unreasonable" and which represents an extreme departure from the standards of ordinary cases . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware

of it.'"  In re Livent Sec. Litig., 148 F. Supp. 2d 331, 349 (S.D.N.Y 2001) (emphasis added; citations omitted); Rothman, 220 F.3d at 90.[4]

Plaintiff fails, however, to allege **any** facts, let alone particularized facts, of the Debit Direct Defendants' state of mind.  The Complaint is devoid of particularized facts demonstrating that any of the Debit Direct Defendants intentionally or recklessly made false statements to plaintiff or that such statements were false when made.  See San Leandro, 75 F.3d at 813 (allegations dismissed due in part to failure to plead that defendants knew the statements were false when made).  The Complaint fails to identify what data or information the Debit Direct Defendants had access to, or knowledge of, that negated the accuracy of the statements allegedly made to plaintiff.  The plaintiff's conclusory allegations are insufficient to satisfy the rigorous requirements for pleading scienter.

## IV.   THE COURT SHOULD NOT EXERCISE JURISDICTION OVER REMAINING STATE LAW CLAIMS

Given that the sole federal law claim must be dismissed, the Court should decline to exercise its supplemental jurisdiction over the remaining state law claims.  The decision to dismiss state law claims is left to the sound discretion of the District Court.  See Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994).  When all federal claims are dismissed, the balance of factors weighs in favor of declining to exercise jurisdiction over the remaining state law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered

---

[4]      Section 10(b) is an anti-fraud statute and does not reach mismanagement, negligence or breaches of fiduciary duty.  See Field v. Trump, 850 F.2d 938, 948 (2d Cir. 1988), cert. denied, 489 U.S. 1012 (1989).  "Rule 10b-5 scienter means intent to defraud and even when plaintiffs rely on the 'recklessness' prong of scienter, they still must show that the defendants acted with fraudulent intent."  Hart v. Internet Wire, Inc., 145 F. Supp. 2d 360, 365 (S.D.N.Y. 2001).

under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."); Castellano v. City of New York, 142 F.3d 58, 74 (2d Cir. 1998); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); Sodexho USA, Inc. v. Hotel & Restaurant Employees & Bartenders Union, Local 217 AFL-CIO, 989 F. Supp. 169, 173 (D. Conn. 1997) ("needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).  Among the factors to be balanced is the nationality of the litigants. First Capital Asset Management, Inc. v. Satinwood Inc., 385 F.3d 159, 182-83 (2d Cir. 2004) (affirming district court's refusal to exercise supplemental jurisdiction because, inter alia, the defendants were foreign nationals).

If the sole federal law claim of securities fraud is dismissed, as it should be, the defendants respectfully submit that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

## V.       THE REMAINING STATE LAW CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.       The Remaining Claims Should Be Dismissed For Failure To Plead Fraud With Particularity

All of plaintiff's state law claims incorporate allegations of fraud.  (Compl. ¶¶ 98, 108, 116, 122, 127, 132, 137, 139, 144 and 148).  As plaintiff has failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b), see Point III.B. supra., these claims must be dismissed.  A court may dismiss a claim for failure to comply with Rule 9(b) even if the claim does not have fraud as an element of the claim where the allegations supporting the claim "sound in fraud." See, e.g., In re Stac Electronics Sec. Litig., 89 F.3d 1399 (9th Cir.

1996) (dismissing Securities Act § 11 claim for failure to comply with Rule 9(b)).  In <u>Stac</u> the

court affirmed the dismissal of a claim for failure to comply with Rule 9(b) where the claim did

not have fraud as an element but incorporated claims of fraud made in connection with a claim

under Securities Exchange Act § 10(b). <u>Id. at 1404-05</u>.  The <u>Stac</u> court reasoned that the same

policy considerations underlying Rule 9(b) apply where other claims are made on the same

allegations as a claim with an element of fraud even where the plaintiff disclaims that it is

asserting the allegations of fraud. <u>Id. at 1405</u> & n.2.  Similarly, in <u>Rombach v. Chang</u>, 355 F.3d

164, 171 (2d Cir. 2004), the Second Circuit affirmed the dismissal of § 11 claim pursuant to Rule

9(b) reasoning "The wording of [Rule 9(b)] is cast in terms of the conduct alleged, and is not

limited to allegations styled or denominated as fraud or expressed in terms of the constituent

elements of a fraud cause of action."

Further, plaintiff's third (Connecticut Uniform Securities Act), fourth (Rescission and

Restitution) and sixth (Fraud and Conspiracy to Defraud) claims require the pleading of fraud as

an independent element of the claim and must be dismissed pursuant to Rule 9(b) for failure to

plead fraud with particularity.

**B      The Court Should Dismiss The CUTPA Claim Because It Does Not Apply To Securities Transactions**

Plaintiff's second claim, asserted against all defendants, purporting to allege a violation

of the Connecticut Unfair Trade and Practices Act ("CUTPA") Conn. Gen. Stat.

§ 42-110a *et seq*., should be dismissed because CUTPA claims may not be based on allegations

of securities fraud.  While the language of CUTPA is broad, Connecticut case law has

established that CUTPA does not apply to securities related claims.

In the seminal case of <u>Russell v. Dean Witter Reynolds, Inc.</u>, 200 Conn. 172, 510 A.2d

972 (1986), the Connecticut Supreme Court determined that CUTPA does not apply to securities

claims.  In <u>Russell</u>, the plaintiff sought to recover substantial losses he sustained as a result of an

unauthorized securities transaction by defendant Dean Witter Reynolds, Inc. and its employee,

broker James Reid. <u>Id. at 174</u>.  Russell's complaint alleged claims of breach of contract,

fraudulent misrepresentation, negligence, and violations of the Connecticut Uniform Securities

Act ("CUSA") and CUTPA. <u>Id. at 173</u>.  The Supreme Court found that the plaintiff could not

recover damages for a securities claim under CUTPA: "we must construe CUTPA as not

purporting to cover transactions for the purchase and sale of securities."  <u>Id. at 180</u>.

    Since <u>Russell</u> was decided in 1986, Connecticut courts have consistently followed the

Supreme Court's ruling and held that CUTPA does not apply to claims related to securities

transactions.  <u>See</u> <u>Greystone Comty. Reinvestment Assocs., Inc. v. First Union Nat'l Bank</u>, 2002

U.S. Dist. LEXIS 2529 at *3 (D. Conn. Jan. 25, 2002) (stating, "It is clear that CUTPA is not

applicable to the sale of securities."); <u>Lockery v. O'Hara</u>, 2002 WL 1837774 (Conn. Super. Ct.

July 1, 2002); <u>Champaigne v. Scarso</u>, 1999 Conn. Super. LEXIS 2429 at *6 (Conn. Super. Ct.

Aug. 25, 1999) ("CUTPA does not apply to deceptive practices in the purchase and sale of

securities."); <u>Seeman v. Arthur Andersen & Co.</u>, 896 F. Supp. 250, 256 (D. Conn. 1995)

(allegations of giving fraudulent advice in connection with a purchase of securities are not

covered by CUTPA); <u>Sciarrillo v. Ceci</u>, 1992 WL 156669, at *1 (Conn. Super. Ct. June 29,

1992) (where complaint facially involves the purchase and sale of securities CUTPA does not

apply).

    Moreover, it is also clear that common law claims do not provide an alternate grounds for

a CUTPA claim where the claim is factually based on a fraudulent securities exchange.  <u>See</u>

<u>Seeman v. Arthur Andersen & Co.</u>, 896 F. Supp. 250 (D. Conn. 1995); <u>Champaigne</u>, 1999 Conn.

Super. LEXIS 2429 at *6.  In <u>Champaigne</u>, the court granted an investment advisor's motion to

strike plaintiff's CUTPA claim.  The court found plaintiff's argument that the underlying claims were based on fraud, conversion, and breach of fiduciary duties "irrelevant."  Id.  The court stated, "[t]he claims are all based on the same underlying factual allegations of a fraudulent securities exchange, a transaction to which CUTPA does not apply."  Id. at *6-7 (emphasis added).

The Complaint in the instant action undoubtedly alleges fraud in connection with a securities transaction.  Plaintiff also seemingly admits that its CUTPA claim falls under CUSA because it expressly incorporates its CUTPA claim into its CUSA claim. (See Compl. ¶ 108). Plaintiff alleges that it was fraudulently induced by the Debit Direct Defendants into purchasing a security; thus the claim for violation of CUTPA must be dismissed.

### C.    Plaintiff's Claim For Negligent Misrepresentation Must Be Dismissed

In addition to the reasons set forth above, plaintiff's negligent misrepresentation claim must also be dismissed. (Compl. Count 8).  To assert a claim for negligent misrepresentation against defendants Debit Direct, Butterworth and Kelly, plaintiff must plead reasonable reliance on a false statement of fact.  In the absence of any allegations of misleading statements, plaintiff cannot sustain a cause of action for negligent misrepresentation.  See Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 548 (D. Conn.) (in order to recover for negligent misrepresentation, a plaintiff must allege an injury that is the direct or proximate result of the alleged misconduct), aff'd mem., 104 F.3d 355 (2d Cir. 1996).

As discussed above, plaintiff has not pled any specific false representation on the part of Debit Direct, Butterworth or Kelly. (See Compl. ¶ 46).  The only representations allegedly made by Butterworth and Kelly are vague, unspecified statements purportedly concerning Debit Direct.  Plaintiff's failure to plead specific false representations by defendants Debit Direct, Butterworth or Kelly is fatal to any attempt to plead reasonable reliance on such representations.

-28-

### D.   Plaintiff's Breach Of Fiduciary Duty Claim Must Be Dismissed

There is no fiduciary duty owed to a prospective investor.  "It is well established that a seller of securities owes no fiduciary duty to a prospective purchaser." In re VMS Sec. Litig., 752 F. Supp. 1373, 1396 (N.D. Ill. 1990); Ambrosino v. Rodman & Renshaw, Inc., 635 F. Supp. 968, 973 (N.D. Ill. 1986) (same).   The Second Circuit has declined to extend the scope of "informal" fiduciary relationships to include parties participating in an arms-length transaction. Brass v. American Film Techs., Inc., 987 F.2d 142, 151 (2d Cir. 1993); see also Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 739 (2d Cir. 1984).  The Brass court affirmed the dismissal of a claim of breach of fiduciary duty brought by a prospective investor who attended a sales meeting with a previously unknown corporate officer. The clear import of the Brass decision is that parties participating in arms-length transactions do not incur fiduciary responsibilities except in unusual circumstances.  In the instant case, there has been no pleading of facts to support the imposition of a fiduciary duty on the Debit Direct Defendants.

### E.   Plaintiff's Claim For Imposition Of A Constructive Trust Must Be Dismissed

Plaintiff asserts a claim seeking to impose a constructive trust in the amount of $2,000,000.  (Compl. ¶¶ 132-36).  "The elements of a constructive trust are the intent by a grantor to benefit a third person, the transfer of property to another who stands in a confidential relationship to the grantor with the intent that the transferee will transfer the property to the third person, and the unjust enrichment of the transferee if the transferee is allowed to keep the property.  A constructive trust is created by operation of law when these elements are present."

Gulack v. Gulack, 30 Conn. App. 305, 310, 620 A.2d 181 (1993).[5]  None of those elements is alleged in the Complaint.

Initially, it is clear that there is no allegation that any alleged wire transfers to Debit Direct payments were to go to anyone other than Debit Direct.  No payments were intended by plaintiff to go to a third party.  As such, the first element is not satisfied.

Second, the defendants do not stand in a fiduciary or confidential relationship to the plaintiff. See In re VMS Sec. Litig., 752 F. Supp. at 1396 (N.D. Ill. 1990); Ambrosino, 635 F. Supp. at 973 (N.D. Ill. 1986).  Nor is there any claim that plaintiff transferred any property to Debit Direct with the intent it be transferred to a third person.  Accordingly, the second element is not satisfied.

Third, there was no unjust enrichment on the part of the Debit Direct Defendants because, as the Complaint admits, the alleged payments made by Debit Direct were in exchange for valuable services, office space and equipment. (Compl. ¶ 61B). Accordingly, the third element is not satisfied.

Having established that none of the elements has been adequately pleaded, and cannot be so pleaded, there are additional reasons why this claim should be dismissed.  First, since money is fungible, courts have long recognized that a constructive trust can not be imposed on money unless the specific funds have been traced and segregated from other funds. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213-14 (2002) ("where the property sought to be recovered or its proceeds have been dissipated so that no product remains . . . plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant.")

---

[5]     A constructive trust may also arise from fraudulent conduct. Jaser v. Fischer, 65 Conn. App. 349, 359, 783 A.2d 28 (2001); Wendell Corp. Trustee v. Thurston, 239 Conn. 109,

(quotation and alteration omitted); <u>United States v. Peoples Benefit Life Ins. Co.</u>, 271 F.3d 411, 416 n. 4 (2d Cir. 2001). Here, there is no allegation that the funds over which plaintiff would impose a constructive trust can be traced or have been segregated, or indeed, exactly what the funds consist of. In reality, plaintiff's constructive trust claim is an improper disguised claim for money damages.

### F.   Plaintiff's Claim For Unjust Enrichment Must Be Dismissed

To recover for unjust enrichment the plaintiff must prove "(1) that the defendants were benefited; (2) that the defendants unjustly did not pay the plaintiffs for the benefits; and (3) that the failure of payment was to the plaintiffs' detriment." <u>Bolmer v. Kocet</u>, 6 Conn. App. 595, 612-13, 507 A.2d 129 (1986); <u>Polverari v. Peatt</u>, 29 Conn. App. 191, 200, 614 A.2d 484 (1992), <u>cert</u>. <u>denied</u>, 224 Conn. 913, 617 A.2d 166 (1992). Before a plaintiff can obtain equitable relief from a court, he or she must show that he has no adequate remedy at law. <u>Brown v. Sandimo Materials</u>, 250 F.3d 120, 127 (2d Cir. 2001) (plaintiff not entitled to restitution for unjust enrichment because he could not demonstrate he had no adequate remedy at law).

Plaintiff has not pled that the Debit Direct Defendants were benefited by the plaintiff.[6] Plaintiff's creative attempt to transmute its legal claim for money damages into one for equitable relief must fail; as an equitable remedy, unjust enrichment does not fit the allegations made by plaintiff. Hence, plaintiff's claim for unjust enrichment should be dismissed.

### G.   Plaintiff's Claim For Breach Of The Covenant Of Good Faith And Fair Dealing Must Be Dismissed

The covenant of good faith and fair dealing is implied in any contract, however the covenant cannot be used to enlarge the rights of any party to a contract. However, the implied

---

113, 680 A.2d 1314 (1996). As established above, plaintiff has failed to plead fraud with the requisite particularity. See Point III.B., supra.

covenant of good faith and fair dealing cannot be used to alter the meaning of a contract. <u>Magnan v. Anaconda Industries, Inc.</u>, 193 Conn. 558, 571-72, 479 A.2d 781 (1984); <u>Dubinsky v. Citicorp Mortg., Inc.</u>, 48 Conn. App. 52, 708 A.2d 226 (1998). Therefore, in order to have a claim for breach of the implied duty of good faith and fair dealing, a contract must exist between the parties. <u>Hoskins v. Titan Value Equities Group, Inc.</u>, 252 Conn. 789, 793, 749 A.2d 1124 (2000) (affirming summary judgment in favor of defendant where no genuine issue of material fact existed that a contract did not exist and therefore no basis for the implication of the duty of good faith).

Here there is no allegation that defendants Butterworth and Kelly were ever party to a contract with the plaintiff.  Certainly if the covenant of good faith and fair dealing cannot be a means of adding terms to a contract, *a fortiori*, the covenant cannot be used to add parties to a putative contract.

---

[6]      This claim is not pled against Debit Direct itself.

## **CONCLUSION**

For all of the foregoing reason, the Complaint should be dismissed in its entirety, specifically, for lack of personal jurisdiction and for failure to comply with Federal Rule Civil Procedure 9(b).  The Complaint should be dismissed as to Defendants Debit Direct, Skanco, Restart, Kelly, Lloyd and Kermode for insufficiency of service of process.  Finally, each of the specific claims should be dismissed for failure to state a claim for which relief may be granted for the reasons set forth above.

DEFENDANTS DEBIT DIRECT LIMITED,
SKANCO BUSINESS SYSTEMS LIMITED,
RESTART LIMITED, DAVID
BUTTERWORTH, MICHAEL KELLY,
BARRY KENNEDY, IAN LLOYD, and
ANDREW KERMODE

By_____
     David J. Elliott (ct04301)
     Terence J. Gallagher (ct22415)
     Day, Berry & Howard LLP
     One Canterbury Green
     Stamford, Connecticut 06901-2047
     (203) 977-7300 (phone)
     (203) 977-7301 (fax)
     E-mail:  tjgallagher@dbh.com

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was mailed on this date, via first-class mail, postage prepaid, to:

Thomas J. Williams, Esq.
399 E. Putnam Avenue
Cos Cob, CT 06807


Paul L. Brozdowski, Esq.
Law Offices of Paul L. Brozdowski, LLC
10 Middle Street, 7th Floor
Bridgeport, CT 06604


_____
                                    Terence J. Gallagher